The CHAMBERSBURG INSURANCE COMPANY *v*. FREDERICK SMITH, for the use of SIMEON NICHOLS.

1. It is not necessary in order to enable a *cestui que trust* to carry on a suit in the name of the trustee, that the trustee should expressly authorize the suit. If the legal plaintiff has a right to recover, the court will see to the proper application of the moneys raised, when moved to do so by a party interested therein.

2. A stockholder in a company empowered the secretary in writing, to transfer certain stock, in pursuance of which the secretary entered on the books that the stock was transferred, "see paper filed," which paper filed, being the power, he wafered to the book and attested the entry of transfer as secretary, *signing no transfer as attorney. Held* that this was a substantial compliance with the by-law, which required the transfer to be made on the books of the company, and to be attested by the secretary.

3. Where a by-law required the consent of the directors to a transfer of stock by a stockholder indebted to the company, but in the practice of the company such cases were never brought before the board, a transfer by such a stockholder, made without that consent, but according to the usage of the company, is good against the company.

4. A chose, which is transferred as collateral security, is put under the dominion of the creditor to make his claim out of it, and is not in the nature of, or subject to, the incidents of a pawn or pledge.

ERROR to the Common Pleas of Franklin.

*June* 14. Philip Berlin, who was president of the Insurance Company, made and delivered to Simeon Nichols a promissory note, dated September 14, 1842. On that day, Berlin, by a power of attorney, authorized Joseph Chambers, the secretary and treasurer of the company, to transfer certain stock, held by him in the company, to Frederick Smith, as collateral security for the payment of the said note, which said stock, by the terms of the power, were to be re-transferred to Berlin whenever the note was paid. The secretary filed the power, and made an entry in the books of the company of the transfer in the following form :—

"No. 61.—The above twenty shares (No. 60), and six shares on which twelve and one-half dollars per share are paid, transferred to Frederick Smith, Esq., as collateral security of note of P. Berlin to Simeon Nichols : vide paper filed.

"JOSEPH CHAMBERS, Secretary.

"September 14, 1842."

The by-laws of the company, regulating the transfer of its stock, are these :—

"20th. No transfer of any share or shares in the capital stock of this company shall be good or available unless the same be made on the books of the company, and be attested by the secretary."

" 21st. No holder of stock shall have the power to transfer the same so long as he is indebted to the company, unless with the consent of the board of directors."

At the time of this transfer, Berlin was, and still is, indebted to the company. There were, however, other transfers upon the books, where the party transferring was indebted to the company, and which were never brought before the directors for their consent.

Berlin's note was not paid at maturity, on the 24th October, 1842, and was protested. No portion of it was ever paid, except $158, which Chambers obtained upon an attachment, in satisfaction of a debt due to him by Nichols. After obtaining his judgment upon that debt against Nichols, and against Berlin as garnishee of Nichols, at the request of Berlin, Chambers applied to the directors, and, with their consent, appropriated some of the dividends due upon Berlin's transferred stock, to the payment of the judgment against Berlin as garnishee. This appropriation of these dividends was ratified by Nichols.

To August Term, 1844, there was entered an amicable action between Nichols, plaintiff, and Berlin, defendant, the object of which was, to determine what was due upon the note. This action not being brought forward for trial, Berlin gave notice to Chambers, as treasurer of the company, not to pay the dividends accruing upon his transferred stock to Nichols. The company refused to pay them, and this action was brought by Nichols to recover the dividends on the stock, which, he alleged, had been transferred to Smith in trust for him. The suit was brought and carried on by Nichols, Mr. Smith taking no part in it whatever, either in its inception or progress.

The defendant below, the company, requested the court to charge the jury—

1. That no person but Mr. Smith had authority to demand the dividends.

2. That the alleged transfer was only as collateral security; and that, until the amicable action was tried, there was nothing owing by Berlin to Nichols, and no one could demand the dividends.

3. That there was no transfer of the stock on the company's books, and that the entry in the book was a mere memorandum, referring to the paper attached to the book. There was no transfer, and there could not be any in this case under the by-laws.

4. That neither Nichols nor Mr. Smith could maintain this suit.

The court below (BLACK, President), charged the jury as follows:

" The intention of the parties, it is manifest, was, that if Berlin

did not pay the note, Nichols was to be the owner of the stock, and to receive the dividends. The plainest justice requires us to carry this intention out. The note was not paid. In common fairness, therefore, the stock belonged to the plaintiff.

"In order to defeat the recovery, it is now asserted that the stock was not legally transferred. Berlin ought not to say this; for he undertook to assign it as security for an honest debt, which his creditor must lose, if he cannot hold this stock. The insurance company has not a much better position. There was a *bonâ fide* intention to transfer the stock, plainly expressed, and the officers of the company, instead of objecting at the time, entered the transfer on their books. Whether made by one or the other, this defence has not much grace or decorum about it.

"Still, if the transfer be unlawful, the plaintiff cannot recover, whatever may be the hardships of his case. It is not said that the transfer was made in violation of the act of incorporation: the defendant's counsel has not pointed out any provision of the charter which has been violated by the transfer. But he asserts that the transfer was made contrary to No. 21 of their by-laws. I do not think it ought to be, or can be, fairly taken, that the by-law produced was intended to forbid the transfer of stock which had not been fully paid in, but to prevent other debtors of the company from transferring stock without paying or securing the debts. Mr. Chambers does not say that Berlin owed any other debt than that which was due on the stock. On the contrary, he says he knows of no other debt due by Berlin to the company, but if the company had a by-law which they chose to violate, it is their fault. There is no evidence that Nichols knew of its existence. Berlin probably had notice of it, and the officer of the company certainly knew all about it. If it *was* a very sinful thing to make a transfer like this, because it was contrary to the 21st by-law of the insurance company, the plaintiff was innocent, because he was ignorant that such a law existed. Yet it is sought to make him suffer for their offence, while the guilty parties (if there was guilt), are to be benefitted by it."

The verdict was for the plaintiff. The defendant sued out a writ of error, and in this court made the following assignment of errors:—

The court erred: 1. In not instructing the jury that Nichols could not bring or maintain this suit, Mr. Smith, the alleged assignee, being in court, and declining to have anything to do with bringing or carrying on the suit.

2. In not instructing the jury that, as the alleged transfer was only as collateral security, and as Nichols had entered into an amicable suit with Berlin, to try whether Berlin owed Nichols, until that suit was tried and a finding for Nichols, he could not bring or carry on a suit for the dividends: that the transfer being only as collateral security, Smith had no authority over the stock but to retain it until the debt from Berlin to Nichols was paid, and Nichols had no greater power.

3. In not instructing the jury that there was in law no transfer of the stock: that the paper signed by Berlin appointed an attorney to transfer the stock—who did not execute that power: that there was no transfer on the books of the company by that attorney or anybody—but a mere filing of the paper and a reference to it on the books of the company: that under the by-laws, there could be no transfer under the circumstances of this case, and there being no transfer, neither Mr. Smith nor Nichols could demand the dividends.

4. In instructing the jury that Nichols could recover the dividends—that there was a valid transfer of the stock—that there was a transfer of the stock on the books of the company—that the by-laws did not forbid the transfer.

The errors are taken to the whole of the charge of the court.

*Jos. Chambers*, for the plaintiff in error.—Where the holder of stock is indebted on the original subscription, or any other debt, though there are other funds in the possession of the corporation sufficient to pay the indebtedness, and though the stock is more than the debt, there can be no transfer of the stock, or any part of it, not even by sale on execution: Rogers *v.* Huntingdon Bank, 12 S. & R. 77; Grant *v.* Mechanics' Bank, 15 S. & R. 140; Sewell *v.* Lancaster Bank, 17 S. & R. 285; Mechanics' Bank *v.* Earp, 4 Rawle, 384.

This was a pawn of special property, not a chose in action, over which bailee had no authority, but to retain possession, and could not bring this suit: Story, *Bailments*, §§ 89, 90, 97, 99, 339, 310, 311, 91, 100, 88; 17 Mass. Rep. 479. Pledgee of a note delivered as collateral, cannot deliver it to officer to levy on: Rhoads *v.* Megonigal, 2 Barr, 39; Wilhelm *v.* Folmer, 6 Barr, 296; 4 Watts, 414.

§ 29 of the company's charter confers power to prevent transfer of stock, while holder is indebted to the company.

*Nill*, contra.—As to the right of the *cestui que trust* to bring this suit: Montgomery *v.* Cook, 6 Watts, 238; Pres. Cong. *v.* Johnston, 1 W. & S. 9; Reigart *v.* Ellmaker, 6 S. & R. 44; Campbell *v.* Galbreath, 5 Watts, 423; Armstrong *v.* Lancaster, Ib. 68; Com. *v.* Lightner, 9 W. & S. 117.

Where money was lent by a bank to a stockholder after notice of the assignment of his stock, the shares are not pledged for its repayment: Nesmith *v.* Washington Bank, 6 Pickering, 324; Alvord *v.* Smith, 5 Pickering, 232; Sargeant *v.* Franklin Ins. Co., 8 Pickering, 90.   Knowledge of the by-laws should be brought home to Nichols: Pierce *v.* Butler, 14 Mass. R. 303; 11 Wheaton, 431.   Purchase of a debt carries with it all the additional securities for it, though not named: Farmers' & Drovers' Bank *v.* Fordyce, 1 Barr, 454.

We can maintain this action without first proceeding against Berlin: Lishey *v.* O'Brien, 4 Watts, 141; Beale *v.* The Bank, 5 Watts, 529; Dyott's case, 2 W. & S. 494; Lewis *v.* Penn Township Bank, 3 Wharton, 536; Brien *v.* Smith, 9 W. & S. 78.

The opinion of this court was delivered by

COULTER, J.—The suit is properly instituted in the name of the trustees for the use of the *cestui que trust*.   It is contended, however, that as Frederick Smith, the trustee, had not expressly authorized the suit, it cannot be carried on in his name.   But that is a mistake.   He did not interdict it; he said he presumed that Nichols had a right to his name without asking his consent.   The court would not have permitted the trustee to arrest the suit.   The *cestui que trust* is answerable for costs, and has a right to impetrate the writ and carry on the suit for his own benefit, in many cases.   All this has been ruled in more than one precedent.   Has this legal plaintiff a right to recover?   If he has, the court will see that the money is properly applied, at the instance of any one having an interest in its disposition and distribution.

Was there then a legal or equitable transfer of the stock by Berlin to Smith, for the use of Nichols, on the books of the company? Notwithstanding the laboured and ingenious argument of the plaintiff in error, the question hardly admits of a doubt.   The by-law of the company, which inhibits an assignment except in the books of the company, and with the assent of the directors, by a stockholder indebted to the company, is all very well.   But this rule was made for the benefit of the company, and to prevent secret transfers whilst the holder was indebted to the corporation.   Simi-

lar provisions in the charters of banks have never been held to prevent the transfer of stock, as between individuals. Stock is a commodity sold and transferred anywhere and everywhere, subject, however, to the lien of the bank, for debts due to it, when such a provision is contained in the charter.

In this case Berlin, the owner of the stock, and a director of the institution, executed a written power of attorney, under seal to Joseph Chambers, treasurer of the company, to transfer the stock to Smith, for the use of Nichols. Upon the delivery of this power to Chambers, no objection whatever was made, and he entered on the books of the company, that the stock in question was transferred to Frederick Smith, as trustee, &c., as per paper filed, then wafered this power to the books and attested the entry as secretary. The entry is marked on the book No. 61; no doubt to indicate the number of the transfer. There is no special *allocatur* by the board, but the secretary testified that there was no instance of that kind. The practice was to permit the transfers in the presence of the secretary, who attested them. Everything was done which the by-laws and usage of the company required, except that he did not sign the transfer twice over, as attorney, and then attest his own signature as secretary. But he no doubt thought, that attaching the sign manual of the holder, appended to the authority or power to the books and entry, was higher evidence of the transfer than his own signature would be. The law looks more to the substance of things than to the mere form. Real estates are divested and transferred, by mere defective execution of a power, when a consideration was named, and even judgments and executions conducted under the eye and supervision of courts have been held to divest a man of his estate, where the hiatus in matter of form, and the departure from statutory provisions, has been much more glaring and emphatic. Why, then, make so much ado, as was done in this case, about Mr. Chambers not having signed this transfer twice? I should think that when a man once attaches his name to the record under circumstances like the present, it ought for ever to estop him from defeating the transaction by an allegation, that, although he ought to have done more, or else told the assignee that the transfer could not be permitted, yet as it was not done, he would defeat the transferree. *Cui bono?* what is the object to be accomplished? does the corporation, if it is she that impels the machinery, intend to keep the dividends? Or is it Berlin, who was president of the company when the power to transfer was given or what person else is it that seeks to defeat the transferree?

It is contended, that the stock being transferred as collateral security for a debt due by Berlin to Nichols, that therefore Nichols must first proceed against Berlin and establish the amount due, in a suit, and seek to recover it by execution, before he can touch either the stock or the dividends. The stock was assigned as collateral security for the payment of a note for $567.75, payable in forty days at the Philadelphia Bank, drawn by said Berlin, in favour of Simeon Nichols, which stock was to be re-transferred when Berlin paid the note.

The intention of the parties is altogether transparent, that if the note was not paid in a reasonable time, the stock was to be absolutely the property of Nichols. The amount is about the same. It was to be re-transferred when Berlin paid the note. Was he to have a long credit, till doomsday, or was he, by the tenor of the contract, to pay it in a reasonable time? Nobody can doubt the latter proposition. Berlin never has paid the note, and, from what was stated at bar, he never will. The note was payable in October 1842, and this suit was not instituted till 14th December, 1846.

In the mean time, Chambers had attached the stock, on a debt and judgment which he had obtained against Nichols, who left the state soon after the transfer, and then applied to the directors for liberty to appropriate the dividends to the satisfaction of his judgment. But he did not do so until he had the consent of Mr. Nill, the attorney of Nichols. When his judgment was satisfied, he entered satisfaction at the request of Nill. This was a clear recognition of the transfer. And why resistance is made in this suit, to the recovery of the dividends by Nichols, so vehemently, I confess I cannot discover. But there is doubtless some object to be accomplished.

I may add on this branch of the case, that although according to the ideal of a corporation, every act must be done by those who represent it, yet, the chief officer, cashier, or secretary, may do many things to bind the company, in the line of his peculiar duties, and in the course of that part of the transaction of the business intrusted to him, and sanctioned by usage. Otherwise there would be no such thing as getting on with business. Such a thing as convening a board of directors or managers to deliberate whether a stockholder should be allowed to transfer his stock, I suppose, was scarcely ever known.

It seems from the testimony, that it was never done in the transactions of this corporation. This supervision of transfer was intrusted, by the managers, to the secretary, by their uniform

practice. It therefore became a rule of the company by which they were bound, of which the public had notice, and on the faith of which they acted, Nichols among the rest. There is no ground therefore to set up this obstruction to defeat an honest and fair transaction.

As to the obligation, first to pursue Berlin, there is nothing in it. The stock was to be re-transferred to him, if he paid the note. But it was stated that he has been insolvent for some time. Nichols might have sued him, recovered judgment, and sold the stock; and in that way the institution would have been no better off, and not quite so well as under this proceeding. But Nichols is content to recover the dividends till his claim is satisfied. And what else is to be done with them? A bond or *chose* which is transferred as collateral security, is put under the dominion of the creditor to make his claim out of it. It is not in the nature of or subject to the incidents of a pawn or pledge. The cases cited on the subject are misapplied. If B. and C. enter into bond to A., C. cannot set up as a defence to the bond, that he was only surety, and that the plaintiff ought to proceed against B. first. Collateral security is one, side by side, with, or in addition to the first, or in addition to the debtor's own obligation. If a man covenants with another, and enters into bond for the performance of his covenant, the bond is collateral. It is put into the hands of the creditor to enable him to make his claim out of it. If before he has done so the debtor discharges the debt, then it is satisfied, and the collateral is re-delivered.

On the whole, this case has no merit in it, either in law or fact, on the part of the plaintiff in error

Judgment affirmed.