# St. Patrick's Male Beneficial Society *versus* McVey.

A member of an incorporated beneficial society does not stand in the relation of a creditor to the society, and can claim only such benefits as are prescribed by the by-laws existing at the time he applies for relief.

January 2d 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of July Term 1879, No. 18. On an appeal from a magistrate.

Assumpsit by Rody McVey against the St. Patrick's Male Beneficial Society.

The society defendant was incorporated by the Court of Common Pleas of Philadelphia county on the 5th of May 1866.

Among the articles of the constitution of the society were the following:

Art. 2. The object of this society is beneficial, and the accumulation of a fund for the mutual aid and relief of those who may become members of it and require its beneficence in sickness or necessity.

Art. 14. The duties of the stewards shall be to visit and examine into the cases of deceased members within twenty-four hours of the receiving an application for benefits (properly endorsed by the secretary), and if, in their opinion, such member is worthy, they shall, at the expiration of seven (7) days from the date of the secretary's endorsement, obtain and pay to him such weekly sum as the existing by-laws may direct, and continue their visits at least twice a week during such illness; and in the event of any case appearing doubtful to them, they shall call upon a physician of respectability, whose opinion in writing shall be decisive. They shall report such decision at the next stated meeting.

Art. 12. The capital and profits of this society, with interest

and dividends of the money and other effects, shall not at any time exceed $2500, Pennsylvania currency. When it amounts to said sum, the society shall make a fair dividend of $1500, giving each member his equal share according to his investment. The remaining $1000 shall be deposited in bank or otherwise as the society may direct.

Art. 13. This society shall have power to make by-laws as well as to carry into effect the provisions herein contained; provided, that no by-laws shall be repugnant to this constitution, nor the constitution and laws of the United States, or the constitution and laws of this state, and all by-laws to be enacted, altered or repealed must be proposed and laid over at least one month before being acted upon.

By article 12, of the by-laws, "every person on being elected a member of the society shall sign the constitution" and article 14, sect. 2, provided, that any member of the society who, after twelve months' membership, is taken sick or otherwise disabled from following his usual or other employment, on application, shall receive five dollars per week. All applications for benefits to be addressed to the secretary for his endorsement, and no claim for benefits allowed until such application is received.

At a regular monthly meeting in September 1876, the society, finding that their funds had become nearly exhausted, proposed the following by-law: "Be it resolved, that we suspend the weekly payments of benefits to the sick members until there is $800 in the treasury." This resolution was laid over (under the rules) for one month, and duly passed at the meeting in October 1876. At the time of the adoption of this by-law, McVey was a member, and had been prior thereto. He became sick, January 1877, and so continued until March 17th 1877. No notice of this sickness was given to the secretary until about four months after his recovery, at which time he was six months in arrears. He then paid the arrearages and demanded his sick benefits, which the society refused to pay—because the funds in the treasury did not amount to the sum required by the by-law passed October 1876.

The court, Elcock, J., charged the jury: "This action is brought by the plaintiff to recover sick benefits from the defendants, who are a beneficial society. There is no dispute about the fact that he was sick during the time that he claims, to wit, from January 20th 1877, to March 17th 1877. The defendants contend that the plaintiff is not entitled to recover, for two reasons: 1. That there was no notice served upon the secretary in accordance with the rules and regulations of the society. This was not of substance in this case. The want of notice here was not one of the substantive requisites for recovery. The want of notice at the time is no substantive reason for not paying the plaintiff. He would be entitled to recover, because the rule in relation to notice was

intended to prevent fraud on the society. Here there is no fraud alleged, but there is no denial of the sickness. 2. They relied upon a resolution or by-law passed October 2d 1876, by which the society resolved not to pay any sick benefits until there should be accumulated the sum of $800.

" This is a confession of insolvency, and the society should have wound up its affairs and gone into liquidation; but they had no right to pass that resolution. It is opposed to the very object for which the society was formed and is unlawful. They cannot pay one class and not another. They must, if they cannot do better than this society did by this resolution, surrender their franchises or make an assessment on their members to raise funds. Counsel for defendants have submitted to me the following point to charge you on: ' If the jury believe that the resolution of October 2d 1876, was regularly passed by the society defendant, the plaintiff, being a member, is bound thereby and cannot recover.' I refuse to so charge you, as the point is given."

Verdict for plaintiff for $44.60, and after judgment thereon, defendants took this writ, assigning for error the whole of the foregoing charge, on the ground that it was equivalent to a binding instruction to the jury to find for the plaintiff.

*William Gorman*, for plaintiff in error.—It is submitted, 1. That the by-law was not unconstitutional. And the society having proven it was absolutely necessary to their existence as a society, and that it was regularly passed—it was binding upon plaintiff; and further, they having declared they were not in funds, it was conclusive on the plaintiff, and defendant's point should have been affirmed.

2. If plaintiff intended to contest the constitutionality of this by-law, notice must be given at the time of the sickness, and in' the manner pointed out by their constitution and by-laws, hence no subsequent notice would entitle plaintiff to recover. To sustain these positions see Cummings *v.* Webster, 43 Maine 192 ; Commonwealth *v.* Pike Beneficial Society, 8 W. &. S. 247 ; Black and White Smith Society *v.* Vandyke, 2 Whart. 309 ; Torrey *v.* Baker, 1 Allen (Mass.) 120 ; Toram *v.* Howard Beneficial Society, 4 Barr 519 ; St. Mary's Beneficial Society *v.* Burford, 20 P. F. Smith 324 ; Breneman *v.* Franklin Beneficial Society, 3 W. S. 218.

*D. B. Meany*, for defendant in error did not furnish a paper book.

Mr. Justice GORDON delivered the opinion of the court, February 9th 1880.

Upon an examination of the charter of the society above named,

we find under article second, the following: "The object of this society is beneficial, and the accumulation of a fund for the mutual aid and relief of those who may become members of it and require its beneficence in sickness or necessity."

Here two important particulars, fundamental in their character, become obvious: 1. The society is a charity, designed primarily, for the relief of such of its necessitous members as may require, that is need, its beneficence; 2. In order that it may be enabled to carry out this scheme of benevolence a fund must be accumulated from the contributions of the membership. Without this it could give nothing, could afford no pecuniary relief, for it would have nothing. What the amount of that fund was to be, under $2500, was left discretionary with the society, as will appear from article sixteen; nevertheless a fixed amount was contemplated. This was wise, for if the money received from monthly dues was to be expended just as it was received the operations of the society must necessarily be fitful and uncertain. One month the sick might be relieved, the dead buried, and the next, it might be impossible to do either for want of means. Hence the efficiency and harmonious working of the society depended largely upon the existence of a permanent fund. It follows, that the by-law regulating the amount to be paid weekly to the sick, was but a rule for the government of the officers in the administration of the society's benefactions, and must necessarily be subject to amendment and alteration to suit the fund set apart for that purpose. Hence arises the error of the court below in treating the case, 1. As though the organization was a quasi insurance company; and 2. As though the by-law, in existence when the plaintiff became a member, was part of a contract unalterable except with his consent.

This error becomes the more obvious upon reference to article ninth of the charter, which provides that the stewards, finding the applicant for "sick benefits" worthy, shall obtain and pay to him such weekly sum as "the existing by-laws may direct." From this it is manifest that the plaintiff ought not to have been allowed to recover under a by-law which had been repealed before he fell sick.

But more than this, to treat the proposed benefaction of this association as a matter of right, was a mistake. When McVey entered the society it promised him nothing of the kind; it promised him pecuniary aid in his sickness or necessity only, in case it had funds for that purpose, and then under the condition that its officers, after notice, found him to be a person worthy of such aid. For the court to say, therefore, that the plaintiff was entitled, as of right, to the sum of five dollars, or any other sum of money per week, whilst he lay sick, and to treat the society as his debtor to that amount, was to introduce into its organic law a novelty found neither in its letters nor spirit.

11 NORRIS—33

[St. Patrick's Male Ben. Soc. *v.* McVey.]

From any and every point of view presented by this case, the defendant was entitled to a verdict, and so the jury ought to have been instructe

The judgment is reversed.