## Devlin, Appellant, *v.* Donohue.

*Beneficial associations—By-laws—Suspension of benefits—Failure to appeal.*

In an action against an unincorporated beneficial association to recover sick benefits, the plaintiff will not be entitled to recover, where it appears that the by-laws provided for the payment of sick benefits only in case the association had funds for that purpose, that at a meeting at which the plaintiff was present, a resolution was passed suspending the payment of sick benefits on account of lack of funds, that the plaintiff although voting against the resolution and protesting against it, did not take the appeal provided by the by-laws, and that the illness for which he claimed benefits began eight days after the resolution was passed.

Argued Nov. 30, 1915.    Appeal, No. 216, Oct. T., 1915, by plaintiffs, from decree of C. P. No. 4, Philadelphia Co., June T., 1913, No. 4230, dismissing bill in equity in

case of Patrick Devlin v. Michael Donohue, et al., trading as Division No. 41 Ancient Order of Hibernians in America. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity against an unincorporated beneficial association to recover the payment of sick benefits.

CARR, J., filed the following opinion:

This case comes up on bill, answer, replication and proofs. The complainant was a member, prior to November 25, 1912, in good standing, of Division No. 41, Ancient Order of Hibernians in America, State of Pennsylvania, which is an unincorporated fraternal beneficial society doing business in this city, and the defendants are also members. The complainant is a carpenter, and was injured on the date named when he was employed by the Turner Construction Co. He received a severe cut across the forehead, and the back of the hand was cut and his back was badly strained, and the right foot below the ankle was badly bruised. He was not able to work and was in the hospital for one month. When he got home he had a plaster cast on his leg, and has not been able to work steadily since. The bill prays that an order be made upon the defendants to pay certain sick benefits.

The defendants contend that the plaintiff has mistaken his remedy, and should have brought suit in a court of law. In Maisch, Appellant, v. Order of Americus, 34 Pa. Superior 436, it has been held that an action of assumpsit will not lie against an unincorporated association, and that the proper remedy is by bill in equity. This case appears again in 223 Pa. St. 199, and the judgment of the Superior Court was affirmed. In Fletcher v. Gawanese Tribe No. 281, 9 Pa. Superior 393, it was held that the remedy by a member of an unincorporated beneficial society against the society for sick benefits alleged to be due and unpaid is by bill in equity and a

589, (1916).]        Opinion of Court below.

demurrer will be sustained in a suit brought at common law against the society eo nomine.

The plaintiff made application for benefits on November 29, 1912, in writing and verbally, and he received a letter from the financial secretary, Casey, stating that the division had suspended benefits. The secretary wrote that they had suspended benefits on November 17th of that year, and that they were not paying benefits. [The plaintiff took no appeal, but upon March 16, 1913, wrote to the president, Donohue, asking attention to the fact that Casey, the financial secretary, received a written notice from him November 18th claiming sick benefits, and stating that the suspension of benefits was taken without the consent of the county board and was unconstitutional and illegal.] (1) He claimed $65.00 as sick benefits, being equivalent to thirteen weeks at $5.00 per week. He received no answer to that letter, nor was he visited by any member of the division. He never had notice of a hearing of the matter before the standing committee of his division, nor did he receive notice that the standing committee had acted upon or decided anything with reference to his claim. Afterward, on September 4, 1913, he sent an appeal to the county board. The appeal was mailed to the recording secretary, O'Day, who, afterward, in an interview, acknowledged the receipt of the communication, but the plaintiff never received any word concerning what was done with the appeal, whereupon this bill in equity was filed.

The answer alleges that the resolution to suspend payment of benefits became necessary by reason of the depleted condition of the treasury, and because of the number of members who were in a destitute condition, and several of whom were reported dying, and whom it was absolutely necessary to aid. The resolution would have passed unanimously, except for the plaintiff's dissenting vote. Moreover, the answer alleges it was not customary to report for the approval of the county board, reso-

lution of suspension of benefits when passed under such circumstances. The answer also claimed that the plaintiff's appeal was taken too late, as several months had elapsed since the action of the division, and the constitution and by-laws in Article XIV, Section 6, provide that no appeal shall be taken by any member or officer from any decision in which he is involved after thirty (30) days from the date on which he is notified in writing of such decision. The answer also claims that the plaintiff's appeal had not been taken in conformity with the constitution and by-laws, which in Section 25 provides that all charges sent to the county board to be acted on by the judiciary committee must be accompanied by the sum of $5 as an evidence of good faith, and it is also claimed that as the plaintiff did not exhaust the remedies provided in the constitution and by-laws, he is not entitled to relief as prayed for.

The national convention of the defendant association meets every two years, and is composed of delegates from all the states in the United States and Canada in which the organization is in existence. They pass the national constitution giving certain rights to the state conventions which meet in August every two years, and the county convention meets in September, and the state and county conventions each have the right to pass laws which are not inconsistent or do not conflict with the national laws. The constitution and by-laws, which was revised and adopted at the national convention held at Chicago, Illinois, July 20, 1912, was put in evidence. The county boards are composed of the division officers located in the county.

In September, 1912, when the question first arose regarding the necessity of suspending benefits in the defendant division, the matter was postponed until the October meeting, and in order that there might be no question, a card was sent to every member of the division, giving notice that at the October meeting, business of importance would be transacted, but without stating

589, (1916).]           Opinion of Court below.

specifically that it was intended to bring the necessity of suspending benefits before the meeting.   [But it was doubtful if such notice was sufficient, so again the matter was postponed, and they sent out a postal card, stating that the suspending of benefits would be discussed at the November meeting upon the 17th, and thereupon the resolution was passed unanimously, except for the plaintiff's dissenting vote.]   (2)

[In regard to his second application in May, 1913, he received an answer verbally at a meeting.] (3)   The members had hoped to have had funds in the treasury to resume the payment of sick benefits, but in May, 1913, the financial condition was no better than in the preceding November, when the suspension of benefits occurred, and the first suspension having expired in May, in the June meeting the suspension was again made by reason of the financial situation.   In neither instance was compliance made with the by-law relating to the suspension of benefits, requiring a reference to the county board for approval.   [Such a course had never been taken, the provision being looked upon as a dead letter, inasmuch as the county board does not control the money.   The county board gives the division no money, and, consequently, has no control over the division's funds, and that is the reason that the provision as to the reference to the county committee is not acted upon.]   (4)

[It is clear that the plaintiff should have appealed to the county board from the action of the meeting of the division suspending the benefits upon November 17th.] (5)

[Although upon that date he was not claiming sick benefits, as he was not injured until the 25th, yet being in good standing, if for any reason the action of the meeting in suspending benefits was illegal and unconstitutional, he had a right of appeal.   So far as the regulation requiring the approval of the county board is concerned, that board has waived it, and has conceded the right of the division to regulate the matter; in other

words, it may be said to have given approval by implica-
tion. But, in any event, if the plaintiff wished to raise
that point to protect his rights for sick benefits, he
should have taken the appeal within the time limit, when
that formality could have been observed and the ap-
proval secured.] (6)   [But even if the time limit for
appeal did not begin to run upon November 17, 1912,
the date of the meeting and resolution, it certainly began
on or about December 1, 1912, when he received notice
from the financial secretary. A decision against his ap-
plication for sick benefits was then given, and he then
had notice not merely of an attempt to suspend benefits
but of the decision of the highest tribunal of the division
that the benefits were in fact suspended.] (7)   In Ar-
ticle XIV, Section 1, relating to appeals and notice, it is
provided that appeals may be taken from the decision
of any president or tribunal on all questions of law or
fact, if notice of such appeal is served on the president
of the jurisdiction from which the appeal is taken, and
filed with the president of the jurisdiction to which the
appeal is taken.   [The highest tribunal of the division
41 was the legally constituted meeting of November 17,
1912, all its members having received due notice that the
purpose of the meeting was to decide the question of sus-
pension of benefits. If, therefore, the plaintiff desired
to raise the question of the constitutionality of the ac-
tion at the meeting, an appeal under the provisions of
Section 6 of Article XIV should have been taken within
thirty days from the date of notice.]   (8)

In Article XXVI, referring to benefits, Section 9, as to
suspension of benefits, it is provided that the division
may suspend all sick benefits for a period not exceeding
one year to meet the financial needs of the division by
resolution passed in any regular meeting held not less
than five days after such resolution shall have been
mailed each member, but such suspension shall not take
effect until approved by the county board.

While the primary meaning of the word tribunal is

the seat of a judge, or the bench on which a judge and his associates sit for administering justice, it has also the meaning of a forum, or a person or body of persons having authority to hear and decide disputes so as to bind the disputants; as the Supreme Court is the highest tribunal in the United States, or the House of Lords in England is the highest tribunal in the Kingdom. (Webster's New International Dictionary.) In Smith v. City of Waterbury, 54 Conn. 174, in construing the twenty-fourth amendment of the state constitution, which prohibits the legislature from increasing the compensation of any public officer during his continuance in office, it was held that a trial before the railroad commissioners was to be regarded as coming within the provision of the statute, and it is said with regard to the meaning of the word case: "These definitions are sufficiently comprehensive to include matters pending before railroad commissioners. They are a special tribunal authorized by statute to hear and determine certain matters pertaining to railroads. Towns and other communities and individuals often have important interests involved in such matters; and these interests are generally determined and the rights of the parties settled after formal and expensive trials. Such a matter may properly be called a case, and the tribunal before which the questions involved are discussed and by which they are decided may with equal propriety be called a court of justice; not an ordinary court to be sure, but a special tribunal authorized to administer justice in a class of cases which experience proves cannot so conveniently and so satisfactorily be tried before the regular courts." In Scott v. Lasell, et al., 71 Iowa 180, a rule of practice was under consideration, and the position was taken that the rule was not applicable, because the board of supervisors, from whose order of allowance an appeal was taken, is not a tribunal, and because the proceedings in which the appeal was taken cannot properly be denominated a civil case within the meaning of the rule. It was said:

"But the order of allowance was made in the exercise of a judicial function, and it appears to us that the board of supervisors, in exercising such function, may properly enough be called a 'tribunal.' We think, also, that the proceedings, though of a special character, are a civil case, within the meaning of the rule."

In Article XIII of the constitution having reference to trials and tribunals, Section 1, for the trial of all charges, suspensions, impeachments, removals and controversies, certain tribunals are established and the jurisdiction is set forth of the national board, the state board, the county boards, the conventions, the national president, the state presidents, the county presidents, and the division presidents. [While the meetings of the divisions are not designated in this article as one of the tribunals, yet under Article XXVI relating to benefits and their suspension under Section 9 the jurisdiction as above quoted is given to the division to suspend.] (10)

[The bill is dismissed, the complainant to pay the costs.] (11)

*Error assigned* was portions of opinion and decree dismissing the bill.

*Paul Reilly,* for appellant.

*Clarence Vanderslice,* with him *J. P. Jenkins,* for appellee.

OPINION BY ORLADY, P. J., April 17, 1916:

This case was fully heard in the court below on bill, answer and proofs. The claim being to recover from the defendant, an unincorporated association, the sum of sixty-five dollars as sick benefits. The plaintiff presented forty (40) requests for findings of fact, thirty-three of which were affirmed, and seven refused, with eight requests for conclusions of law; five of which were refused and three affirmed.

589, (1916).]          Opinion of the Court.

Twenty-seven exceptions were filed by the plaintiff to the findings of fact and conclusions of law, which, upon consideration were dismissed: the adjudication therefore made was confirmed, and the plaintiff's bill was dismissed. Twenty-seven assignments of error are presented for our consideration, and after a careful examination of the whole record, a majority of the judges who heard the argument are of the opinion that the conclusion reached by the judge who disposed of the case in the court below fully answers every question raised by the assignments.

A member of an incorporated beneficial society does not stand in the relation of a creditor to the society, and can claim only such benefits as are prescribed by the by-laws existing at the time he became entitled to relief. This society promised the plaintiff pecuniary aid in his sickness or necessity only, in case it had funds for that purpose, and then under the condition that its officers found him to be a person worthy of such aid: St. Patrick's Male Beneficial Society v. McVey, 92 Pa. 510; Chambers v. Maccabees, 200 Pa. 244; Marshall v. Pilots' Assn., 18 Pa. Superior Ct. 644.

The court has found on sufficient testimony that the resolution or amendment to suspend benefits temporarily, on account of lack of funds, became operative on November 17, and the plaintiff's injuires, for which he claimed sick benefits occurred on November 25th. The resolution to suspend payments of benefits was passed at a meeting when the plaintiff was present, in good health, and he was the only member who voted against it; his opposition being so violent and disturbing that he was forcibly ejected from the meeting. He had direct notice of its adoption, and did not follow the course prescribed by the by-laws in taking an appeal from the action of the association.

The decree is affirmed.