## Singer, Appellant, *v.* Brith Achim Beneficial Association.

Argued December 17, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes and Hirt, JJ.

*Louis A. J. Robbins,* for appellant.

*Abraham Wernick,* with him *E. Louis Rosen,* for appellee.

OPINION BY STADTFELD, J., January 30, 1941:

This is an action in assumpsit brought by a widow of a member of the defendant association to recover the endowment or death benefits payable upon the death of her husband.

The case was tried before BONNIWELL, J., without a jury after issue joined upon the statement of claim and the supplemental affidavit of defense. On a rule for judgment entered for want of sufficient supplemental affidavit of defense, judgment was entered in favor of the plaintiff in the sum of $500 for which amount the supplemental affidavit of defense was adjudged insufficient and the case proceeded to trial for the balance of the $1000 death benefit claimed by the plaintiff. Paragraph 11 of the statement of claim averred that under the constitution and by-laws of the defendant association, death benefits payable by the defendant association on the death of a member "is raised by assessments levied upon the members." It was further averred in paragraph 12 that the defendant association does not issue benefit certificates.

The uncontroverted facts established by the admissions of the pleadings offered in evidence and testimony of the plaintiff's witnesses were as follows: Israel Singer was a member of the defendant association from 1909 until the time of his death, September 14, 1937. At the time of his death, he was a member in good standing and the plaintiff was the widow of the deceased member. The assessments levied upon the member and required to be paid by him were regularly and faithfully paid; from and since the time he joined the association to August 8, 1937, the assessments levied and paid by him were based on an endowment payable to his widow of $1000.

The by-laws of the association as they were prior to August 8, 1937, were offered in evidence by the plaintiff under the provisions of which (Article 12, sec. 2)

the association was required to pay the widow death benefits in the amount of $1000.

The contention raised in the supplemental affidavit of defense was that Article 12, sec. 2 of the by-laws was amended on August 8, 1937, reducing the death benefits to $500. At the time of the trial testimony of the association in support of this contention was submitted through one witness, the secretary of the association, endeavoring to establish that the amendment was validly and legally adopted. At the conclusion of the secretary's testimony, counsel for plaintiff moved the court to strike out all the testimony of the secretary on the subject of the amendment of the by-laws on the grounds—first, that the adoption of the amendment is contrary to the law of the state, having been adopted on a Sunday; second, that the amendment was invalid because the procedure followed in its adoption did not conform with the procedure prescribed by Article 21 of the by-laws which was the article pursued in the attempted adoption; third, that Article 14 of the by-laws is the controlling by-law governing the amendment of the by-laws and the procedure followed should have been that prescribed by Article 14. The trial judge reserved decision on the motion and without ruling thereon entered a finding for the defendant. This appeal followed and the trial judge thereupon filed an opinion in support of the judgment entered.

The principal question for our consideration is the validity of the amendment to the by-laws adopted August 8, 1937, reducing the death benefit from $1000 to $500. It reads as follows: "Paragraph 2 of Article 12 of the Brith Achim By-Laws is hereby amended. It shall hereafter read as follows: The usual death benefit shall be $500 for a member and $500 for a member's widow. The sum, the association shall pay according to the assessment postmortem plan and as soon as

this is adopted it shall immediately become effective and become the law of the Association."

According to the evidence it appears that Israel Singer, the deceased member, was admitted in the defendant association in 1909. At that time the amount of death benefits was only $500. In 1913, the death benefits were raised to $1000 by an amendment to the by-laws. On August 8, 1937, the death benefits were again reduced to $500, thereby restoring it to the same amount that was in existence when Israel Singer became a member. Israel Singer died on September 14, 1937. It is, therefore, to be noticed that at the time of the death of Israel Singer, the death benefits were in the amount of $500 which was the same amount that existed at the time of his admission as a member.

By reason of the fact that death benefits were raised by assessments levied upon the members after death of a member, no rights vested in the member during his lifetime, and the by-laws could therefore be changed at any time prior to the death of a member regarding the amount of death benefits payable. This principle of law has been recognized by our appellate courts as early as 1880 in the case of *St. Patrick's Male Beneficial Society v. McVey,* 92 Pa. 510, and was fully discussed and firmly recognized by this court in *Willison v. Willison et al.,* 123 Pa. Superior Ct. 515, 520, 187 A. 325, where Judge RHODES, speaking for this court, said: "The designated beneficiaries have no vested right in the fund payable under and by virtue of the beneficial certificate and could have none until the death of the member." See also, *Chambers v. Supreme Tent of the Knights of Maccabees,* 200 Pa. 244, 49 A. 784; *Coffey v. Maccabees,* 292 Pa. 58, 140 A. 551; *Devlin v. Donohue,* 62 Pa. Superior Ct. 589, 592; *Gurnacki v. Polish, etc., Union,* 113 Pa. Superior Ct. 189, 194, 172 A. 480. The association was therefore within its rights in amending

its by-laws by reducing the amount of assessments payable prior to the death of Israel Singer.

The method of amending the by-laws is prescribed by Article 21: "1. No amendments or additions to the by-laws of this Association shall be made, unless a written motion, signed by a member in good standing is submitted to the Association. The President shall read this motion to the members present at the meeting and shall pass it on to the Advisory Board. The Advisory Board has the right to amend the motion. 2. After the Advisory Board has passed its opinion on the motion, the members shall be informed in writing of the contents of the motion and they shall be asked to attend the next meeting. The President shall then read the motion to the members and shall also read the names of the members of the Advisory Board who voted pro and con on the motion, as well as the name of the original makers of the motion. He shall also request two members of the Advisory Board, on each side (pro and con) as well as the original maker or makers, to discuss the motion. Each member shall be allowed to talk not over 5 minutes. If a motion is carried by a majority of those present, it shall become a law."

The secretary of the defendant association testified that the procedure for the amending of by-laws as prescribed in the constitution was complied with. There is no question, and the plaintiff's counsel admits that the amending motion was made by a "member in good standing in accordance with the by-laws." Nor can it be denied that the general membership was notified of the proposed amendment which was to be submitted to a vote at the August meeting of the association. The notice was inserted in the regular monthly Bulletin of the Association (Vol. XVI, July, 1937, No. 165) as follows: "Please read carefully! The bill to reduce the endowment from $1000 to $500 each for husband and wife, will be considered at a special meeting ......

Sunday, August 8, 1937, 2:30 P.M. sharp. Since this will be the only notification of this very important meeting, please bear this date in mind ...... and come without fail! ......".

The minutes of two advisory board meetings, (June 3, 1937 and July 1, 1937) were introduced in evidence to prove that action in favor of the amendment was taken by that body: "And it is now adopted that the bill of Brother N. Prussen, that the endowment which the Brith Achim Association pays at this time shall be changed to $500". "After this it was decided ...... to call a special meeting to take under consideration this bill. The meeting was called for Sunday afternoon after the first regular meeting in August, and that the bill shall be advertised in the Brith Achim Bulletin".

The secretary of the association testified that the meeting was held as scheduled; that between 500 and 600 members were present; that the president announced the avowed purpose of the meeting and read the proposed amendment to the members; that "many members spoke concerning this issue. According to the laws, 65 brothers wanted to take the floor. The president explained he is perfectly willing to remain with the brothers ...... even until tomorrow morning ...... so long as their talks are confined to the question in issue. For three and a half hours the members spoke for and against the bill ...... Then the president announced that there remained still 43 speakers. Then the motion was presented and carried that five brothers shall speak for the bill and five against the bill and each shall be limited to a five minute talk ...... All the brothers had had an opportunity to express their opinion. Then it was taken to a vote and the by-law was almost unanimously adopted, with the exception of twelve brothers, who voted against it ......"

The lower court said, "Upon this record, we found

that the amendment was lawfully adopted by the members in substantial compliance with the requirements of the laws of the association, that it was a valid and subsisting by-law at the time of the death of plaintiff's decedent, and that the plaintiff, therefore, was entitled to receive as death benefit only the sum of $500. This amount payable on the death of a member and raised among the members by post-mortem assessment, was paid by the defendant association to the plaintiff. Judgment, therefore, was entered in favor of the defendant."

The finding of a trial judge without a jury supported by legally competent testimony, is as conclusive and binding as the verdict of a jury.

"In altering, amending, or repealing by-laws it is necessary to comply substantially with the formalities, if any, prescribed ...... by the constitution or by-laws in force at the time where these are binding upon the body making the change. But a substantial compliance is sufficient:" 14 C. J. 358 (sec. 456). As early as 1849, our Supreme Court held an act of a corporation performed in substantial compliance with a by-law was valid. In the case of *Chambersburg Insurance Co. v. Smith,* 11 Pa. 120, 125, the court held: "Everything was done which the by-laws and usage of the company required, except that he did not sign the transfer over, as attorney, and then attest his own signature as secretary ...... The law looks more to the substance of things than to the mere form."

The evidence does not support the contentions of the plaintiff that the proposed amendment was not read at the meeting, or that insufficient notice was given to the members concerning the amendment, or that the advisory board did not first vote on this question. Indeed, the converse is true, for the minutes state, "The bill was read as follows ......" The official bulletin of the society carried a conspicuous notice in the July issue concerning the meeting and its purpose. This

notice, the secretary testified, was mailed to all of the members of the association under his personal supervision, and the membership list checked and rechecked by him. The minutes of the two advisory board meetings read into the record clearly establish that body's favorable action on this proposal.

Appellant contends that the amendment is invalid because Article 14 of the constitution or basic laws were not complied with. It is to be noted that Article 14 refers to the procedure where an amendment is attempted of the *constitution* as differentiated from an amendment to the *by-laws* which is controlled by Article 21 of the by-laws. Plaintiff attempts to brush that distinction aside by arguing that the term "constitution" as used by the defendant is intended really to refer to "by-laws" as there is no real distinction between the two. While it is true that the constitution in this case is not intended to be used in the same light as if they were the actual charter provisions, yet there is a vital distinction between the first 14 articles of the constitution, appearing in the record, and the 21 articles of the by-laws appearing thereon. That distinction is recognized by the defendant in separating the two groups; and designating the first group as "basic laws" and the second group as "by-laws".

Plaintiff quotes from Bacon on "Life and Accident Insurance including Benefit Societies, etc." that what is often termed "constitution" by a beneficial association, is nothing more than by-laws. While that may be true, yet as was pointed out in 7 C. J. pp. 1072 and 1073: "These rules are of course subject to its charter, and to that extent, although denominated a constitution, are no more than by-laws in a broad sense of that term; yet they are distinguishable from by-laws, as that term is commonly used, where they prescribe, subject of course to the charter, a fundamental rule for the government of the corporation, and where a further and

subordinate set of rules, in terms denominated by-laws, is enacted by the society." In the instant case, the 14 articles termed "basic laws", are fundamental rules for the government of the corporation; and the subsequent 21 articles termed "by-laws" constitute a further and subordinate set of rules intended to regulate the general affairs of the organization.

In view of that situation, the defendant was justified in following the procedure as set forth in Article 21 of the by-laws rather than Article 14 of the basic laws, since they were amending a provision of the *by-laws* and not of the *basic laws*.

The plaintiff also suggests that the association was without power to change the amount of the death benefit because of the unreasonableness of the amendment. The authorities do not support this view. It is well established in this Commonwealth and elsewhere that a mutual beneficial association has the right to determine the amount and extent of the death benefits, and to change the amount by majority vote in accordance with its constitution and by-laws: *Myers v. Alta Friendly Society,* 29 Pa. Superior Ct. 492. The membership has the inherent right whenever it deems it necessary to fix the death benefit in any amount; for upon this amount the members are required to assess themselves on the death of a brother-member. That the amendment under consideration was properly adopted and substantially in accordance with the laws of the society, is amply supported by the evidence. As we have said, it is valid and binding upon all the members and upon their beneficiaries.

Plaintiff contends that the amendment in question having been adopted on a Sunday, is void. Plaintiff evidently overlooks the fact that if her contention should prevail as to this amendment, the same reasoning would also apply to the amendment which was

adopted in 1913 increasing the death benefits from $500 to $1000.

The Act of April 22, 1794, 3 Sm. Laws 177, 18 PS 1991, Section 1 of the Act states: "if any person shall do or perform any worldly employment or business whatsoever on the Lord's day commonly called Sunday (works of necessity and charity only excepted) ......", he shall be subject to a penalty.

The issue here is whether the work of this association can be construed as a work of charity or necessity within the exception of the Act. We believe it can be so construed. The purpose of the defendant association is declared in its constitution to be, "(1) to develop friendliness and brotherly love among its members; (2) to help a brother in case of sickness or in any other extraordinary necessity; (3) to take care of the burial of a deceased member and to compensate his family with a certain amount."

Our appellate courts have long recognized that beneficial societies such as defendant organization are of a philanthropic or benevolent character. This court said in *Cimprich v. Penna. R. R. Co.*, 119 Pa. Superior Ct. 5, 13, 14, 180 A. 51, "Quoting from the opinion of Mr. Justice CLARK in *Commonwealth v. Equitable Beneficial Association*, 137 Pa. 412, 419, 18 A. 1112, one of the leading cases on the question of distinction between an insurance company and a beneficial association: 'What is known as a beneficial association, however, has a wholly different object and purpose in view. The great underlying purpose of the organization is not to indemnify or to secure against loss; its design is to accumulate a fund from the contribution of its members, "for beneficial or protective purposes", to be used in their own aid or relief, in the misfortunes of sickness, injury or death. The benefits, although secured by contract, and for that reason to a limited extent assimilated to the proceeds of insur-

ance, are not so considered. Such societies are rather of a philanthropic or benevolent character: their beneficial features may be of a narrow or restricted character; the motives of the members may be to some extent selfish, but the principle upon which they rest is founded in the considerations mentioned. These benefits, by the rule of their organization, are payable to their own unfortunate, out of funds which the members have themselves contributed for the purpose, not as an indemnity, or security against loss, but as a protective relief in case of sickness or injury, or to provide the means to a decent burial in the event of death. Such societies have no capital stock. They yield no profit, and their contracts, although beneficial and protective, altogether exclude the idea of insurance, or of indemnity, or of security against loss.' To same effect is *Northwestern Masonic Aid Association of Chicago v. Jones et al.,* 154 Pa. 99, 26 A. 253."

It should be borne in mind that there are thousands of similar associations of all faiths throughout the entire country conducting their meetings on Sunday for many, many years, and it certainly would be revolutionary to hold that they have been violating the law and that all their transactions have been illegal.

We believe that the court below arrived at the correct conclusion.

The assignments of error are overruled and judgment affirmed.