Commonwealth v. Bauder
Commonwealth v. Mills

*Paul A. McGinley*, for Commonwealth.

*Harold E. Kohn*, *Morris Efron* and *George J. Joseph*, for defendants.

HENNINGER, P. J., June 24 1958.—Defendants are employes of a full scale department store in Whitehall Township, Lehigh County, operated by a corporation named Two Guys from Harrison under that name with some departments owned by the corporation and some leased to others.

On Sunday, December 8, 1957, defendants worked for hire in departments of that store that clearly did not deal in goods necessary to be sold on a Sunday. Each was arrested and fined $4 and costs for violating section 699.4 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4699.4, which reads as follows:

"Whoever does or performs any worldly employment or business whatsoever on the Lord's day, commonly called Sunday (works of necessity and charity only excepted), or uses or practices any game, hunting, shooting, sport or diversion whatsoever on the same day not authorized by law shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of four dollars ($4), for the use of the Commonwealth, or, in default of the payment thereof, shall suffer six (6) days imprisonment.

"Nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bakehouses, lodging-houses, inns and other houses of entertainment for the use of sojourners, travellers or strangers, or to hinder watermen from landing their passengers, or ferrymen from carrying over the water travellers, or persons removing with their families on the Lord's day, commonly called Sunday, nor to the delivery of milk or the necessaries of life, before nine of the clock in the forenoon, nor after five of the clock in the afternoon of the same day."

Defendants have petitioned the court for allowance of an appeal, whereupon we granted a rule to show cause why an appeal should not be allowed. In lieu of deposition called for by Lehigh County Rule of Court 6(b)(3) attorneys for defendants and the district attorney filed a stipulation of facts that may be summarized as follows:

Two Guys from Harrison is a department store with a full line of clothing, furniture, jewelry, auto and home appliances, hardware, and including groceries, drugs, meats and Christmas items.

In April 1957, upon request, the District Attorney of Lehigh County refused to prosecute a retail store accused of violating the Sunday laws, referring the matter to local police. In fact, for six years prior to

December 9, 1957, no prosecutions in Lehigh County for violation of that act are known to the parties.

On December 9, 1957, December 17, 1957, December 27, 1957, and January 3, 1958, the district attorney caused the arrest of employes, including the present defendants, of Two Guys from Harrison who were employed in departments selling items other than those in the food, drug and restaurant departments on the respective Sundays preceeding the days of arrest.

On December 8, 1957, counsel for defendants shopped 41 retail stores, on December 15, 78 retail stores, on December 22, 80 retail stores and on December 20, 52 retail stores. From the names it would appear that these were generally markets, drug stores and service stations. In each case the purchaser bought some item which would not be considered a necessity. The district attorney, when notified of these alleged violations, offered to prosecute any appeals from convictions, but would not initiate a prosecution.

The District Attorney of Lehigh County and the Mayor of the City of Allentown, during periods when defendants were being prosecuted, announced that they would not prosecute bowling alleys which remained open on Sundays and that they would not arrest for the sale of Christmas trees, plants, shrubbery or flowers on Sunday.

On Sunday, March 2, 1958, a "Home Show" accompanied by displays, but with no sales, was operated without prosecution by the district attorney.

Cement mills, a truck manufacturing company, newspapers, radio stations, public amusement parks, golf courses and swimming pools operate on Sundays and have not been prosecuted.

Appellants concede for the purposes of this case, that employment as a sales clerk in a department handling goods whose sale on Sunday cannot be called an

act of necessity or charity is a violation of the Act of 1939 as written. They contend, however, that the Act of 1939 under which they were prosecuted is invalid and unconstitutional as: (1) A law respecting the establishment of religion; (2) not being a valid exercise of police power; (3) discriminatory because (a) part of a scheme to establish unfair, discriminatory and unreasonable classifications and (b) applied with an evil eye and an unequal hand, resulting in illegal discrimination between persons in similar circumstances, material to their rights; (4) so vague and indefinite as to violate the Fourteenth Amendment of the United States Constitution.

Appellants further contend that, even if the act is constitutional and their conviction valid, no costs can be collected from them.

According to Sheppard's Annotations or Purdon's Statutes, section 699.4 of the Act of 1939 has not been tested on the basis of its constitutionality. Nor has the diligence of counsel revealed any such decision. So far as we have been able to discover, it has been construed but once, though cited oftener: Chadwick v. Stokes, 162 F. 2d 132. All of the citations assumed its constitutionality.

This section of the Act of 1939, however, is a reenactment of section 1 of the Act of April 22, 1794, 3 Sm. L. 177, whose language does not differ in any material respect from the Act of 1939. We take it then that any decisions relating to the Act of 1794 will be applicable to the later act. See section 52(3) and (4) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

The whole question of the constitutionality of the Act of 1794 was exhaustively considered in Specht v. The Commonwealth, 8 Pa. 312. That case of course was decided before the adoption of the Fourteenth

Amendment to the United States Constitution, so it does not weigh the act in the light of the First Amendment to the U. S. Constitution. It does, however, apply the third section of article 9 of the Pennsylvania Constitution and all that is said concerning that section would apply with equal force to the First Amendment to the Federal Constitution, since that amendment is not nearly as stringent as the corresponding provision in the Pennsylvania Constitution.

On pages 323 and 325 of the Specht opinion, it is stated:

"Though it may have been a motive with the lawmakers to prohibit the profanation of a day regarded by them as sacred—and certainly there are expressions used in the statute that justify this conclusion—it is not perceived how this fact can vitally affect the question at issue. All agree that to the well-being of society, periods of rest are absolutely necessary. To be productive of the required advantage, these periods must recur at stated intervals, so that the mass of which the community is composed, may enjoy a respite from labour at the same time. They may be established by common consent, or, as is conceded, the legislative power of the state may, without impropriety, interfere to fix the time of this stated return and enforce obedience to the direction. When this happens, some one day must be selected, and it has been said the round of the week presents none which, being preferred, might not be regarded as favouring some one of the numerous religious sects into which mankind are divided. In a Christian community, where a very large majority of the people celebrate the first day of the week as their chosen period of rest from labour, it is not surprising that that day should have received the legislative sanction: and as it is also devoted to religious observances, we are prepared to estimate the reason why the statute should speak of it as the Lord's day, and denominate

the infraction of its legalized rest, a profanation. Yet this does not change the character of the enactment. It is still, essentially, but a civil regulation made for the government of man as a member of society, and obedience to it may properly be enforced by penal sanctions. To say that one of the objects of the legislature was to assert the sanctity of the particular day selected, is to say nothing in proof of the unconstitutionality of the act, unless in this the religious conscience of others has been offended and their rights invaded.

"It intermeddles not with the natural and indefeasible right of all men to worship Almighty God according to the dictates of their own consciences; it compels none to attend, erect, or support any place of worship, or to maintain any ministry against his consent; it pretends not to control or to interfere with the rights of conscience, and it establishes no preference for any religious establishment or mode of worship. It treats no religious doctrine as paramount in the state; it enforces no unwilling attendance upon the celebration of Divine worship. It says not to the Jew or Sabbatarian, You shall desecrate the day you esteem as holy, and keep sacred to religion that we deem to be so. It enters upon no discussion of rival claims of the first and seventh days of the week, nor pretends to bind upon the conscience of any man any conclusion upon a subject which each must decide for himself. . . ."

As we understand appellants' argument, they are not troubled in their conscience by the denial of the right to work on Sunday, but they complain that they should not be denied the right to engage in worldly employment whenever they see fit. Nor do they contend as was contended in the Specht case (see page 326) that this conscience either prevents them from working on some other day in the week or compels them to work on Sunday. Both of these contentions are fully answered in the Specht case.

Appellants' contention that the act is unconstitutional for uncertainty was decided against them in Commonwealth ex rel. v. American Baseball Club of Philadelphia, 290 Pa. 136, where it is stated, page 143:

"On appellant's second proposition that the act is unconstitutional for uncertainty, we, think very little is required to be said. See 37 Cyc. 541; 12 C. J. 1275. It has been on the statute books for 133 years and has been the subject of much judicial consideration. When its language is given its ordinary not a strained construction, its meaning we think is plain. It may be that those who do not wish to understand or abide by its provisions find them uncertain; surely those who wish to follow the custom of our people in Sunday observance do not so find the interdictions of the statute. We can see no basis whatever for the argument that the act violates the 14th Amendment to the federal Constitution."

It is to be noted that neither of the dissenting justices in the baseball case questioned the validity of the Act of 1794. Both dissented only from the application of quo warranto for its violation.

We do not understand that appellants are questioning the right of the legislature to limit the hours of labor either as to the hours per day or week or the specific hours in any one day or the amount of continuous hours of rest which an individual is to be permitted or directed to have. This power in the legislature was recognized in Commonwealth v. Beatty, 15 Pa. Superior Ct. 5, 16. That such legislation does not contravene the Federal Constitution has been decided in Holden v. Hardy, 169 U. S. 366.

The Specht case, supra, has decided that the legislature, having determined that there shall be a day of relief from wordly employment, had the right to choose Sunday as that day and that even if Sunday were chosen because of the religious convictions of

the community, that 'mixed motive', if we may interpolate a modern phrase into an old opinion, would not vitiate the choice of the day of rest.

It appears to us that there is: (1) A valid reason to select one specific day upon which all persons shall rest; and (2) a reason not advanced in the Specht case why Sunday should be that day. The two reasons serve one purpose, namely, ease of enforcement.

If the day of rest chosen is one which the great majority of people are already bound by conscience to observe, the State will have the sanction of conscience as well as the fear of punishment as a motive for enforcement of its policy of relief from labor. Everyone connected with the enforcement of law can testify to the support given to the maintenance of law and order by those who obey the law from conscience rather than from fear of punishment.

It can readily be seen that selecting a specific day greatly aids in the enforcement of the law. If a person is found engaging in worldly employment on a Sunday, he is guilty. He is also more conspicuous and easier to detect than he would be if others were legally employed in the same occupation on that day. To permit a person to rest on a day of his own choice would compel the Commonwealth to prove which was the day of his choice and that he had not rested on that day or if he had no day of his own choice to prove that he had worked on each of the other six days of the week. Any such requirement would practically nullify the law.

We give but three illustrations of laws whose terms are dictated by the desire to advance ease of enforcement. The fixed maximum speed limit is enforcible, although in specific instances, it might not be a dangerous speed. It might frequently be just as safe or even safer for a motorist to move slowly into a through street rather than to come to a complete stop. But "slow" is a relative term while "stop" is an absolute

one, capable of inexorable determination and therefore easier of enforcement. The new unpopular law forbidding aliens to own dogs or firearms, since amended as to dogs, Act of April 5, 1957, P. L. 52, has been sustained as a means of enforcing a law designed to preserve the game of the State for its own citizens: The Game Law of June 3, 1937, P. L. 1225, sec. 1002, 34 PS §1311.1002, held constitutional in Commonwealth v. Patsone, 44 Pa. Superior Ct. 128, 231 Pa. 46, 232 U. S. 138.

And so fixing of one specific day as the one on which no worldly employment is to be done is justifiable because of the difficulty of enforcing any other rule.

Appellants also contend that the use of the term *"worldly* employment" indicates that the act must have been passed in furtherance of one religion over another. Just the opposite is the case. Had the word "worldly" been omitted, then the act would have limited people in their *religious* exercises as well and a better argument could have been made of its unconstitutionality in that case.

Appellants' next contention is that even if the law was once clear and fair, and the Specht case would preclude any other position, it has been so modified by judicial interpretation and legislative exception as to have become in fact vague and discriminatory.

This argument was recently rejected by the Supreme Court of Ohio in an opinion by the distinguished Judge Zimmerman in the State of Ohio v. Kidd, 167 Ohio 521. The opinion states, page 526:

"Sunday observance laws are in force in most of the states, and generally certain activities have been excepted from their coverage. These Sunday laws are sustained quite uniformly upon the theory that the selection of subjects for exemption is peculiarly a matter of legislative discretion. Fundamentally, discrimination is the very essence of classification and is

not objectionable unless founded on distinctions which the courts are compelled to pronounce unreasonable or purely fictitious."

It is to be noted that the exceptions mentioned in the Ohio case, sale of liquor, ball games, motion pictures, trapshooting, are either the same or very similar to those advanced by appellants as abrogating our statute.

In discussing this phase of the case, we eliminate from consideration those mentioned in the Act of 1939 itself, because they were apparent to the courts which held the Act of 1794 constitutional. It must be assumed that the court in the Specht and American Baseball Club cases considered all possible objections to the constitutionality of the act and that we are bound by such a finding: Keator v. Lackawanna County, 292 Pa. 269, 272; Swatara Township School District's Appeal, 1 Pa. Superior Ct. 502, 505; Wheeler v. Rice, 4 Brewster 129.

We can also eliminate those that were authoritatively decreed by our appellate courts, because those courts also assumed the constitutionality of the act, despite any interpretive exceptions of its operations. The cases cited (Commonwealth v. Nesbit, 34 Pa. 398; Murray v. The Commonwealth, 24 Pa. 270; Sparhawk v. The Union Passenger Railway Company, 54 Pa. 401, though this case does not make an exception to the statute; Singer v. Brith Achim Beneficial Association, 143 Pa. Superior Ct. 372) all define either what is "worldly" or what is an "act of necessity," except the Singer case which holds that a meeting of a beneficial association is an act of charity.

As for the lower court cases cited, they deserve our respect, but they cannot affect the law as written, without the authoritative interpretation of our higher courts.

We come then to the statutes permitting acts on Sunday otherwise prohibited by the Act of 1939. Ap-

pellants' brief, which we accept as exhaustive, cites motion pictures, baseball, football, polo and tennis, which are all subject to local referendums, and musical concerts, fishing, the release of trapped animals and the sale of liquor by clubs. They also call attention to the fact that higher penalties are provided for the violation of Sunday observance by pool, billiard and bowling alleys, automobile dealers and for violation of the terms upon which excepted sports are permitted.

Several observations may be made. The release of already trapped animals is clearly an act of charity: See Luke 14:5.

Appellants are not hurt by the more severe penalty for sale of automobiles or for any other violation on Sunday. These acts are in the spirit of the Act of 1939 and not hostile to it. When a convicted automobile dealer or operator of a pool or billiard parlor or of bowling alleys shall cry prejudice we can deal with his case. Appellants are not prejudiced by the higher penalty imposed upon others.

Clubs are not specifically exempted from section 699.4 of the Act of 1939. Our liquor laws (section 492 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-492(7)) simply state that it shall be unlawful for clubs to sell between 3 and 7 a.m. on any day. Whether their purveying of liquor on a Sunday does or does not come within an exception in the Act of 1939 we can decide when the case is presented to us.

This leaves the sports and entertainment exceptions. These may represent a swing from the Scots' Sunday or the traditional Hebraic Sabbath to a continental Sunday which would be within the province of the legislature. Even the continental Sunday, however, does not countenance industrial or commercial employment on Sunday. The departure may represent a widened conception of permissible *diversion* on a Sunday, the conception that innocent diversions as well

as rest may have a regenerating influence upon the laboring public. This entertainment may also involve some worldly employment on the part of those who furnish the sport or entertainment. Such a departure from the Act of 1939 is, nevertheless, only incidental so far as worldly employment is concerned. The spirit of the act is, however, preserved so far as it concerns those who may have to labor to furnish the diversion in that the permissible hours are strictly limited and, so far as motion pictures are concerned, a full other day of rest is prescribed for those compelled to labor on Sunday: Act of March 31, 1937, P. L. 159, 43 PS §481. None of these acts can possibly prejudice appellants, because none relate to any field of employment in any way related to that of appellants and none are inconsistent with the preservation of a prescribed period of cessation from labor.

Lastly, appellants contend that in practice in this community, enforcement against them is discriminatory because so many others are allowed to flout the law with impunity. Clearly a law enacted less than 20 years ago cannot be labeled a dead letter law.

It is probably true that some manufacturers have overemphasized the importance of continuity of operation for reasons that could not by any stretch of the imagination be construed to be an act of necessity. It also seems apparent that some purveyors of food have confused necessity with necessaries and are catering to the improvidence rather than to the necessity of the community. Gasoline stations have probably remained open on the theory that if the public may be "removing with their families" the station may provide them with the means for such removal.

We reserve our opinion on whether operation of gasoline stations, newspaper plants, radio stations, swimming pools, golf courses and amusement parks

constitutes a violation of the Act of 1939 until the question shall be presented to us.

Assuming arguendo that all of these persons have violated the law with impunity, that defense is not available to one who has been prosecuted for such violation: Commonwealth v. Grochowiak, 184 Pa. Superior Ct. 522, 527, the latest case on the whole subject on Sunday law enforcement.

But appellants confront us with a list of some 251 alleged violations induced by the shoppers of their employer, which the district attorney has not prosecuted. At the same time, the district attorney publicly announced that he would not prosecute bowling alleys, Christmas tree sales or those of flowers or shrubbery.

Appellants point to these permitted, sanctioned and unpunished infractions and invokes the case of Yick Wo v. Hopkins, 118 U. S. 356, which states, page 373:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. . . ."

The Yick Wo decision does not apply to our situation for several reasons: (1) The unconstitutional ordinance in the Yick Wo case was *passed* for the purpose of permitting discrimination in its enforcement; (2) there is no showing that the district attorney discriminated between stores or departments similar to those in which appellants were engaged; (3) the district attorney does not have it within his power to nullify an act of assembly.

The Act of 1939 is a State law. While that would not prevent the application of the Yick Wo principle (see Quinn and Beal v. United States, 238 U. S. 347,

in which it was applied to a State constitutional amendment), our Pennsylvania Supreme Court has decided, in the several cases cited heretofore and in others, that the law was passed for a lawful purpose and we are bound by those decisions. We cannot strike down a State law because at one place and in certain phases it has not been strictly enforced, or because it is not all inclusive. See Commonwealth v. Grochowiak, supra; Bothwell v. York City, 291 Pa. 363, 370.

Nor may we inquire into the motives of the district attorney in aiding in prosecution of some violators and not in all possible prosecutions. While motive may affect the credibility of a prosecutor, it is no defense to a clear violation of the law: Commonwealth v. Morgan, 162 Pa. Superior Ct. 105, 113, reversed on other grounds, 358 Pa. 607.

In spite of the claim of multitudinous unpunished violations, there is no real prejudice against appellants or their employer. We are not told exactly what appellants themselves sold, but it is a fact in the case that appellants were not employed in the food, drug or restaurant departments and that no arrests were made of employes in those departments. The names of the alleged violators indicate that they were engaged in the business of dispensing food, drugs and fuel.

We are not deciding that any or all of such establishments have the right to operate on Sundays. We simply find that there was no prejudice against appellants' employers since similar departments of theirs were not disturbed. While we assume that the shoppers confined themselves to baubles only to lessen the cost of their shopping and not because the establishments could not have been induced to sell more substantial items if they possessed them, the fact remains that the type of "unnecessary" item purchased was merely incidental to the business of practically every place shopped. Since appellants' employers were allowed to

continue with impunity their food, drug and restaurant departments, there is no showing of prejudice: Commonwealth v. Grochowiak, supra.

In the correspondence between counsel for appellants' employer and the district attorney, the latter offers to prosecute any *appeals* from summary convictions, but he declines to initiate prosecutions. He seems to be within his rights in so doing: The County Code of August 9, 1955, P. L. 323, sec. 1402, 16 PS §1402, defines the duties of a district attorney in counties of the third and eighth classes as follows:

"(a) The district attorney shall sign all bills of indictment and conduct *in court* all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorneys general, and receive the same fees or emoluments of office."

It follows then that inaction by a district attorney cannot change the law in this jurisdiction. Any citizens could initiate a prosecution, and every citizen has a stake in prosecutions begun under the district attorney's direction. No action or inaction on the part of the district attorney can affect a law violator's responsibility for his violations. Nor would it affect appellants' guilt or innocence if the district attorney interested himself in their original prosecution, although he might not have been compelled by law to do so.

It would be a sad state of affairs indeed if the solemn act of the General Assembly could be repealed at the whim of a district attorney chosen in this jurisdiction by approximately two percent of the State's population. If the law is the law of the Commonwealth of Pennsylvania, then it is the law of Lehigh County, one of the Commonwealth's subordinate municipalities,

whether the district attorney chooses or not to initiate prosecution of every known violation.

This brings us to the question of costs. Whether or not it is properly raised by appeal from conviction, appellants' exhaustive brief merits our consideration, although the giving of bail on appeal may have constituted a waiver of the right to question the liability for costs. See the opinion of Judge Trexler in Commonwealth v. Evans, 59 Pa. Superior Ct. 607, 613:

"Furthermore by a general law, the Act of April 17, 1876, P. L. 29, the legislature has given the court jurisdiction of the costs in summary convictions. That act provides 'that upon the allowance of an appeal in cases of summary conviction the appeal shall be upon such terms as to payment of costs and entering bail as the court allowing the appeal shall direct.' The general practice in such cases is to require the defendant to enter bail for the costs which have accrued and which may accrue to be paid if the conviction is sustained. It would be an anomaly to hold that a defendant who does not appeal need pay no costs, and one who appeals and is convicted must pay them. We conclude that the defendant having been convicted is liable for the costs."

Appellants persuasively contend that since the Act of April 22, 1794, contained a fourth section, 18 PS §632, providing for payment of costs and since the Act of 1939 contains no similar provision, the legislature intended that costs should not be recoverable upon conviction of section 699.4 of The Penal Code. To the contention that the fourth section of the Act of 1794 was not repealed by the Act of 1939, appellants reply that section 2 of the Act of 1794 relating to blasphemy was repealed and that a section on blasphemy written into the Act of 1939 as section 523, 18 PS §4523, provides that costs shall be recovered, and that the word

"costs" in section 523 would be unnecessary if section 4 of the 1794 Act were still to apply to these two sections.

Appellants further point to the fact that, by their count, accepted by us, 28 sections in the Act of 1939 relating to summary convictions provide for costs, while only three, including section 699.4, do not. It is further suggested that section 64 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 19 PS §1223, which provides that "in all cases of conviction of any crime, all costs shall be paid by the party convicted", relates only to indictable offenses and not to summary convictions.

To the contention that at common law, all defendants, guilty or innocent, paid costs and that therefore no act need be cited giving authority to collect costs from convicted defendants, appellants reply that summary convictions are not common law offenses, but the creatures of statute law and therefore the common law principle does not apply. Several respectable lower court cases are cited in support of this contention: Commonwealth v. Barnhart, 22 Dist. R. 246; Commonwealth v. Cooper, 9 D. & C. 358; Commonwealth v. Mobley, 40 D. & C. 311, and others.

Appellants do not suggest who shall pay the costs involved. They do make the point that costs are collectible only when an act of assembly so directs, citing among others, the leading case of Commonwealth v. Trunk, 320 Pa. 270, 274. This principle has usually been invoked when an attempt was made to collect from counties: Gilkyson v. County of Bucks, 84 Pa. 22; Huntingdon County v. The Commonwealth, 72 Pa. 80; Dunn v. Dietrick, 4 D. & C. 2d 74, 76.

Section 2 of the Act of January 7, 1951, P. L. 1841, as amended, 42 PS §217, provides that the justice of the peace shall receive certain costs in summary conviction cases and in section 3 thereof, 42 PS §218, pro-

vides when the county shall be liable therefor, namely, (1) upon acquittal and (2) upon conviction and commitment for nonpayment.

Since the statute prescribes the circumstances when the county shall be held for costs, it surely cannot be held in other instances. In our case, appellants were neither acquitted nor committed and therefore the county cannot be held liable for the costs. It follows then either that defendant must pay the costs or that the justice and constable must go unpaid (Commonwealth v. Dietrick, supra, 77), since the county cannot be made liable for costs unless expressly so provided by statute: Crawford County v. Barr, 92 Pa. 359, 363; Codding v. Bradford County, 116 Pa. 47, 53.

It is our opinion, however, that appellants' whole argument must fail because section 4 of the Act of 1794 is still in force and is applicable to section 699.4 of the Criminal Code of 1939 as it has always been to section 1 of the Act of 1794. It has never been repealed specifically and it is not at all inconsistent with the Criminal Code and therefore has not been repealed by implication. The very mention of sections 1 and 2 of the Act of 1794 in the repealer clause of the Act of 1939 would lead to the inference that the other sections were to remain in force.

We also suspect that appellants would be the first ones to assert the 72 hours statute of limitations in section 4 of the Act of 1794, which would of course be inoperative if that section no longer applied to section 699.4 of the Act of 1939.

The construction that section 699.4 of the Act of 1939 is a reënactment of the Act of 1794 would be fortified by section 82 of the Statutory Construction Act of 1937, 46 PS §582, which provides:

"Whenever a law is repealed and its provisions are at the same time re-enacted in the same or substantially the same terms by the repealing law, the earlier law

shall be construed as continued in active operation. All rights and liabilities incurred under such earlier law are preserved and may be enforced."

We have already pointed out that there is no substantial difference between section 1 of the Act of 1794 and section 699.4 of the Code of 1939. Therefore, there is no incongruity in having section 4 of the Act of 1794, unrepealed, apply to section 699.4 of the Criminal Code, a reënactment of section 1 of the Act of 1794.

Nor would section 91 of the Statutory Construction Act of 1937, 46 PS §591, affect this result. It provides:

"Whenever a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject."

While the code purports to be a general, but not an exclusive, system on criminal law, it does not purport to cover the subject of liability for costs. It follows, therefore, that existing laws relating to liability for costs are beyond its scope, despite the use of the word in connection with many of the sections.

Appellants' argument from the use of the word costs in connection with section 523 of the Criminal Code based upon section 2 of the Act of 1794 is without merit, because that section in the code is not a reenactment of the section of the 1794 Act. The definition of the crime is different, the method of calculation of the penalty is different and the penalty is greatly increased both as to the amount of fine and the length of imprisonment upon default. Since the two first sections of the Act of 1794 were treated so differently in the Code of 1939, there is no inference to be drawn from the mention of costs in section 523 of the code and the failure to mention it in section 699.4 thereof.

In our opinion, the sounder logic would be that costs were not mentioned in section 699.4 because they were already covered in the unrepealed section 4 of the Act of 1794.

*Order*

Now, June 24, 1958, appellants' rule to show cause why an appeal should not be allowed is discharged and the appeal denied and it is ordered that appellants within 20 days pay the fine and costs imposed upon them and the costs of this appeal.