# FIRST DISTRICT, 1901.

---

WESTERN UNION TELEGRAPH COMPANY v. L. B. DOWNS.

Decided April 1, 1901.

**1.—Telegraph Company—Negligence—Wrong Name of Office and Town.**

Where a telegraph company has for many years maintained an office at New Waverly, but on its printed list of offices kept for the guidance of its operators the town was put down by the name of Waverly, and a message was tendered directed to New Waverly, which the operator declined to receive, not knowing that the company had an office at New Waverly, the telegraph company was liable for the damages resulting from such failure to receive and transmit the message.

**2.—Same—Ordinary Care.**

It is want of ordinary care for a telegraph company to adopt an arbitrary name for one of its offices differing from the actual name of the town in which it is located, and to furnish its agents only with such arbitrary name to guide them in determining what messages to accept.

**3.—Same Contributory Negligence.**

Where a telegraph operator had refused to receive and forward a message announcing to a party the serious illness of his mother, the failure of the person offeringthe message to then forward it by telephone was not contributory negligence where such person did not know there was telephone connection with the point to which the message was addressed.

Appeal from Walker. Tried below before Hon. J. M. Smither.

*Norman G. Kittrell* and *George H. Fearons,* for appellant.

*Ball, Dean & Randolph,* for appellee.

GILL, Associate Justice.—Plaintiff, L. B. Downs, brought this suit against the defendant telegraph company to recover damages for the alleged refusal on the part of the company to transmit and deliver to plaintiff the following message: "L. B. Downs, New Waverly, Texas: Your mother is very sick. Come at once. (Signed) W. J. Worthington."

Defendant answered by general demurrer and general denial, and alleged that it had no such office at New Waverly in all its list of offices. That the only office of such a name it had was the office of "Waverly," in Walker County, Texas, and having no such office as New Waverly, it was not authorized to receive a message directed to such office, nor to contract to send it. Defendant further answered specially that plaintiff had no affection for his mother, but had driven her from his house and refused her shelter. Defendant further pleaded contributory negligence in that plaintiff's agent who tendered the message for transmission could, by the use of long distance telephone have communicated with plaintiff in time to have had him at the bedside of his mother before her death, and that a failure to do so was contributory negligence which ought to bar a recovery.

Trial by jury resulted in a verdict and judgment for plaintiff, from which defendant has appealed. The facts briefly stated are as follows: Plaintiff's mother was living with W. J. Worthington, about fourteen miles from Navasota, Texas, and plaintiff was a physician living at New Waverly in Walker County, Texas, and only a few hundred yards from defendant's telegraph office at that point. The distance between New Waverly and Navasoto was about forty-five miles. There is a village called Waverly situated about eight miles east of New Waverly, which had been in existence much longer than the latter town. New Waverly is situated on the International & Great Northern Railroad, and is about thirty years old. The railway station is marked by the railway company "Waverly," and the telegraph office, which has been maintained there for many years, is set down in the telegraph company's books as "Waverly." The name of the town is in fact New Waverly, and has been so known over Walker and adjoining counties since its establishment. Navasota is situated in Grimes County, which

adjoins Walker County. The United States postoffice at New Waverly is "New Waverly postoffice," letters addressed simply to Waverly going to the older town east of that point. Defendant's agent at Navasota had been on duty at that point only a few months, and having been reared in a different part of the State, knew of no such town as Waverly or New Waverly, but in sending messages was governed by the offices as entered alphabetically in a book furnished her by the company for her guidance.

On November 17, 1899, plaintiff's mother became very ill at the home of W. J. Worthington, and he sent one Flynt to Navasota with a message to be transmitted over defendant's wires to plaintiff at New Waverly, giving him the money to pay the usual charges. Flynt arrived at Navasota at night, and the telegraph office being closed, he tried to get the railway operator to send it, but his request was refused. Next morning he tendered the message to the telegraph company's agent for transmission. She looked in the list of Offices furnished her by the company, and finding no such office as New Waverly, refused to accept the message for transmission. Flynt then hurried back to Worthington and reported the facts. Worthington at once sent a messenger on horse back across the country to apprise plaintiff of his mother's condition. Upon receipt of the advice he hastened to Worthington's house, but when he arrived his mother was dead. In her last hours she continually called for him and wanted no doctor but him. Had the message been sent by defendant with reasonable dispatch when tendered, it would have reached plaintiff in time for him to have been with his mother prior to her death. Neither Worthington, who sent the message for transmission, nor Flynt, who carried it to Navasota, knew that the two towns were connected by long distance telephone.

It is the duty of telegraph companies by reason of their public character to accept and transmit messages without discrimination. Crosswell, Law of Elec., sec. 450. We think it logically follows that, subject to reasonable regulations which the law permits them to prescribe, they must be held to the exercise of ordinary care in the discharge of this imposed duty. We are unable to perceive any distinction in this respect between a willful refusal to accept and transmit a message and a negligent failure so to do. The consequences are the same. In this case, as has been seen, the company had maintained an office in New Waverly and telegraphic connection between the two towns for many years, and must, in the nature of things, have sent many messages between the two places. Worthington, when he sent the message to Navasota from a point fourteen miles in the interior had the right to assume that his message would be accepted and transmitted with reasonable dispatch. The failure of plaintiff to reach the bedside of his mother was the immediate consequence of the failure of the company to discharge the duty which the law imposed.

We think it also logically follows that the company must exercise ordinary care to furnish its agents with the necessary information as

to the names of the towns in which their offices are located, so that may be able to know what messages to accept. This duty is not discharged by adopting an arbitrary name for one of its offices, differing from the actual name of the town in which it is located. Nor can the public be held to a knowledge of the name so arbitrarily adopted by the company. We think the evidence ample to show that the company was negligent in failing to furnish its agent with the necessary information, and that the agent was negligent in not advising Flynt that it had an office called "Waverly."

We are of opinion that the facts do not present the issue of contributory negligence, and that the court did not err in refusing to give the special charge submitting that issue. Worthington lived fourteen miles in the country. His messenger was authorized to send a telegram, not a telephone message. Neither he nor Flynt knew of the telephone connection. When Flynt returned, Worthington discovered that his messenger had already traveled fourteen miles and return to no purpose. In his ignorance of the existence of the telephone, which had been established only four months, he naturally concluded the speediest way to inform the son of the impending death of his mother was to send a messenger, as he did. It might also be pertinently asked how could a countryman be expected to know of the telephone connection when the company's own agent did not know of the telegraph connection between the two towns.

We find that the plaintiff suffered damages in the sum found by the jury, and no error being found in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.