## STATE v. COLLETT.

### Opinion delivered January 23, 1904.

SABBATH BREAKING—WORK OF NECESSITY.—Where a belt in a saw mill employing 200 men was broken on a Saturday through an unforeseen defect, and could not be repaired until Sunday, for lack of gasoline, which could not be procured earlier, the repairing of the belt on Sunday, without which the mill would have to be shut down on Monday, as it required 18 hours for the belt to dry after it was glued, was a work of necessity within the exception in the statute against Sabbath breaking (Sand. & H. Dig. § 1887).

Error to Clark Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

STATEMENT BY THE COURT.

In this case the defendant, D. F. Collett, was indicted by the grand jury of Clark county for Sabbath breaking by causing work and labor to be performed on Sunday. The defendant was the foreman of a large sawmill which had over two hundred employees. On Saturday, the 25th day of July last, the belt for the edger of the mill got out of repair. The mill was shut down at 4:30 p. m. of that day, and the mill-wright and his assistant worked until after 6 o'clock to get the belt ready to put in a splice, and got it partially prepared for the splice. But to make the glue used in splicing the belt hold it was necessary to take the oil out of the belt. Gasoline was required for this purpose, and it was discovered that there was none on hand. After supper the defendant endeavored to procure the gasoline at Arkadelphia, the largest town in the county, being a place of some three thousand inhabitants, but none could be obtained. Gasoline was obtained early the next morning, though in what way the agreed statement of facts does not show. But the agreed statement of facts shows that it is not safe to use a belt in less than eighteen hours after a splice is made, for the glue must have that time to harden. Not being able to complete the repair of the belt on Saturday night on account of the lack of gasoline, the defendant had the work completed early Sunday morning, in order to give the glue the necessary time to harden so that the mill might run on Monday. It was agreed that, had this not been done, not only the sawmill, but all the other departments of the mill plant depending upon the sawmill for lumber, would have been closed down for a day, and that over two hundred men would have lost a day's work and a day's wages. Under these circumstances the circuit judge, to whom the case was submitted on an agreed statement of facts, found that the work was one of necessity, and that the defendant was not guilty, and the state appealed.

*George W. Murphy, Attorney General,* for appellant.

The agreed statement of facts showed a plain violation of the statute. 20 Ark. 289; 55 Ark. 10; 61 Ark. 216.

*J. H. Crawford,* for appellee.

The labor performed by appellee was not contrary to the statute. 56 Ark. 127.

RIDDICK, J. (after stating the facts). The only question in this case is whether the evidence was sufficient to justify the finding of the circuit judge that the work which the defendant caused to be done on Sunday was a work of necessity within the meaning of our statute forbidding work and labor to be done on the Sabbath. Leaving out the religious view of the matter, it is no doubt good public policy to require one day of rest each week, for that much rest is needed by most men; and in this age of fierce competition, if one man labors on Sunday, it tends to force other men in the same business profession to do likewise, in order to keep on even terms with him. But while for this and other reasons Sunday laws should be enforced, yet there are certain exceptions to the law forbidding work and labor on Sunday, based on reasons as sound as those upon which the law itself rests. One of these is that in a case of necessity one may labor on the Sabbath, and the defendant here undertakes to justify his act on the ground that it was a matter of necessity.

In a recent case we said that "courts in construing the term 'necessity,' as employed in these Sunday statutes, have generally given it a liberal, rather than a literal, interpretation," and that "it is not an absolute, unavoidable, physical necessity that is meant, but rather an economic and moral necessity." *Shipley* v. *State,* 61 Ark. 219. The court in that case sustained a conviction for Sabbath breaking where the defendant labored in operating the pumps and fans of a coal mine to prevent the accumulation of water and gas in the mine, because the proof did not show that the defendant could not, by a reasonable expense, have employed some other device to keep the water and gas out of the mine, and thus obviated the necessity of working on Sunday. So, in an earlier case, the court held that the defendant was guilty of violating the Sabbath by cutting his wheat on that day, though the same may have been wasting from over-ripeness. It was there said "that the husbandman should look forward to the ripening of his grain as an event which must happen, and should make such timely provision for the harvest as not to violate the Sabbath." *State* v. *Goff,* 20 Ark. 290. In neither of those cases was it a matter of necessity to work on the Sabbath, for the reason that the contingency should have been foreseen, and could have been obviated by the use of reasonable exertion or expense. But

the necessity which required the work to be done on the Sabbath in this instance was not the result of natural causes which anyone should have foreseen, but was the result of an unexpected defect in the edger belt, which became known on Saturday, and made the repairs necessary. These repairs could then have been completed before Sunday but for the lack of gasoline, which the defendant tried to obtain in Arkadelphia, the nearest large town, but could not do so. The evidence, we think, justified the court in finding that the defendant was not to blame in failing to foresee that the edger band would get out of repair on Saturday, or for the failure to procure the gasoline earlier than he did, as one would reasonably suppose that gasoline could be procured in any town of three or four thousand inhabitants.

As the evidence is sufficient to support the finding that he was not to blame in either of these respects, the question we have here is not whether one can labor on Sunday in order to save work on Monday, but whether it is justifiable for a few men to work a few hours on Sunday in order to save the work and wages of a large number of men for the whole of Monday. For, although it required but a small amount of work by a few men to splice this belt, yet by reason that it took eighteen hours for the glue to harden so the belt could be used after being spliced, if the work had been postponed until Monday, over two hundred men would have been thrown out of work for the entire day, and would have lost their wages on that day. We are not sufficiently acquainted with sawmills to see very clearly how the breaking of an edger belt could have had such an effect upon the operation of other portions of the plant as to throw so many men out of work and cause such a loss. But, while we feel a little skeptical on that point, it is thus written in the record, both parties agreeing that this was so, and this was one of the material facts upon which the court below based its judgment. Though, under the law of this state, we have the power to reverse judgments of acquittal in prosecutions for misdemeanors and order a new trial, yet where the question is one of fact entirely, we should do so only in those cases where justice clearly requires it. But under the circumstances of this case we are of the opinion that the finding of the circuit court that the work performed on Sunday was one of necessity has evidence to support it, and should be sustained.

Judgment affirmed.