CHADWICK et al. v. STOKES et al.
No. 9231.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 20, 1947.

Decided June 6, 1947.

David H. H. Felix, of Philadelphia, Pa. (Felix & Felix, of Philadelphia, Pa., on the brief), for appellants.

George O. Philips, of Philadelphia, Pa. (McDevitt, Philips & Farran, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS and KALODNER, Circuit Judges, and McGRANERY, District Judge.

BIGGS, Circuit Judge.

The suit at bar is one for specific performance of a contract made on a Sunday for the sale of real estate situated in Pennsylvania. A motion to dismiss was granted at the conclusion of the plaintiffs' evidence on the ground that since the contract was entered into on a Sunday, it was *void ab initio* under the Pennsylvania Sunday law. See Act of June 24, 1939, P.L. 872, § 699.4, 18 P.S.Pa. § 4699.4. The inferences to be taken from the evidence therefore must be those most favorable to the plaintiffs. We will state only those facts which we deem necessary for the disposition of the appeal.

The plaintiffs, the Chadwicks, are husband and wife. They have three children, age ten, five and three years respectively. On August 1, 1946, Mr. Chadwick, then an officer in the United States Army, received orders to leave Atlanta, Georgia and to report not later than August 5, 1946, to Fort Dix for separation from the service. He went immediately to Philadelphia and assisted his wife in looking for a home. On Saturday, August 3, the Chadwicks found a property in Lansdowne which they deemed suitable. The defendants James R. Stokes, Jr., and Russell P. Stokes, were the owners of the premises. The defendants, Amelia E. Stokes and Eva B. Stokes, respectively the wives of the defendants named in the preceding sentence, had rights

of dower therein. All of the terms of the sale were agreed upon between the plaintiffs and the defendants by 9:30 P. M. on Saturday evening. A telephone call was then made to the defendants' real estate broker and he was asked to draw an agreement of sale. The broker suggested that the agreement be drawn not then but at 9:00 A.M. the following day, viz., Sunday, August 4, 1946. On Sunday a written agreement of sale was drawn and was entered into by the parties. By its terms the defendants agreed to sell and the plaintiffs agreed to buy the premises for $10,500. A $200 check dated August 5, was drawn by the plaintiffs to the order of the defendants' broker and was delivered to him. The plaintiffs stated that the premises were "uniquely valuable" to them because situated in a neighborhood where they had lived before and because of the extreme scarcity of houses, the plaintiffs having no home in which to live.

The present Pennsylvania Sunday law, reenacted in 1939, is almost a verbatim copy of Section 1 of the original Act of April 22, 1794, 18 P.S. § 1991. It provides:

"Whoever does or performs any worldly employment or business whatsoever on the Lord's day, commonly called Sunday (works of necessity and charity only excepted), or uses or practices any game, hunting, shooting, sport or diversion whatsoever on the same day not authorized by law, shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of four dollars ($4), for the use of the Commonwealth, or, in default of the payment thereof, shall suffer six (6) days' imprisonment.

"Nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bake-houses, lodging-houses, inns and other houses of entertainment for the use of sojourners, travellers or strangers, or to hinder watermen from landing their passengers, or ferrymen from carrying over the water travellers, or persons removing with their families on the Lord's day, commonly called Sunday, nor to the delivery of milk or the necessaries of life, before nine of the clock in the forenoon, nor after five of the clock in the afternoon of the same day."

The complaint in the suit at bar alleges diversity of citizenship and jurisdictional amount. The contract of course

was to be executed in Pennsylvania. It deals with land within that Commonwealth. The law of Pennsylvania governs. The parties have been assiduous in citing many Sunday law cases not only from Pennsylvania but also from numerous other jurisdictions. The plaintiffs have cited the Sunday statutes of some eighteen States. Some are similar in substance to that of Pennsylvania. Some are quite dissimilar. It would be a futile thing to deal with each Act in detail. It is sufficient to say that most, if not all of them, prohibit worldly employment on the Sabbath but except works of necessity. We think that the courts of Pennsylvania should and would give weight to the decisions of the courts of other States in determining the issues of the case at bar in view of its unusual circumstances.

The court below concluded[1] that the decision of Judge Nelson McVicar, then a Judge of the Court of Common Pleas in and for Allegheny County, in Weinstein v. Buehner, 75 Pittsb.Leg.J. 124, and that of the Supreme Court of Pennsylvania in Cook v. Forker, 193 Pa. 461, 44 A. 560, 74 Am.St.Rep. 699, were decisive. An examination of these authorities convinces us that they are not conclusive in the case at bar. In the Cook decision it appears that a promissory note was given on Sunday when necessity did not require it. In the Buehner case there was no necessity that the contract for the sale of the house be entered into on Sunday. Moreover, an inference could be drawn from the facts as stated in the Buehner case that the house was to be used to entertain boarders; at least it does not appear from the opinion that the house was to be used only as a home by the purchaser.

The defendants contend that the key to the interpretation of the exception of works of necessity in the statute lies in the public welfare and not in individual convenience. We are unable to discern this principle in most of the judicial pronouncements. The decisions which follow will illustrate the difficulty which is encountered. We have

in fact found no Pennsylvania case in which the act performed was a necessity if we define that word literally.[2]

In Commonwealth v. Fuller, 4 Pa.Co.Ct. R. 429, 18 Phila. 610, the selling of railroad tickets to persons about to attend a camp meeting was held to be a necessity. It was held that a railroad is a necessary means of travel and that camp meetings are a form of religious worship. The Pennsylvania statute, however, literally interpreted, does not exempt travel for any purpose unless it be a necessity.

In Commonwealth v. Shipley, 35 Pa.Co. Ct.R. 132, 18 Pa.Dist.R. 133, the offense charged was the fixing of a railroad switch on Sunday. It was pointed out that Sunday was the day when travel was at a minimum and hence the switch could be fixed without danger to life and public property. The occasion, however, seems to have been one of convenience rather than of necessity.

In Commonwealth v. Minichello, 8 Pa. Dist.R. & C. 198, the defendant sold gasoline on Sunday and the court concluded that it was necessary for persons to travel by automobile and that the sale of gasoline was an incident of such travel. It was not shown that any person to whom Minichello sold gasoline had to travel on Sunday.

In Commonwealth v. Nesbit, 34 Pa. 398, the defendant was a servant who drove his master to church. Here the decision was based upon the proposition that attending church services on Sunday was proper and that the work of a servant was incident to his master's traveling to church. There was, however, no showing that Nesbit's employment as a driver was necessary.

In Murray v. The Commonwealth, 24 Pa. 270, the defendant opened the locks on the Schuylkill Canal on a Sunday. The court held that doubtless some of the travel along the Canal on that day would be within the exception of necessity and that it was unreasonable to expect the keeper of the locks to ascertain from each traveler why he was traveling. The court also held in effect that the public had a right to travel on Sunday

---

[1] Judge Kirkpatrick's opinion was pronounced orally from the bench.

[2] "Necessity" is defined as "The quality or state of being necessary, unavoidable, or absolutely requisite; inevitableness; indispensableness." Webster's New International Dictionary.

and that the opening of the locks was incident to that right. But it was not shown that any travel on the Canal on that Sunday was a work of necessity.

In the comparatively recent case of Singer v. Brith Achim Beneficial Ass'n, 143 Pa. Super. 372, 18 A.2d 131, 135, the Association at a Sunday meeting changed its by-laws respecting death benefits, reducing them from $1,000 to $500. A widow seeking the benefit asserted that because the reducing resolution was passed on Sunday it was void. The Superior Court of Pennsylvania held that since the Association was a beneficial one the work carried on by it could be held to be a "work of charity." The statute here seems to have met with some violence. The court disclosed the basis of its reasoning, however, when it stated in concluding its opinion, "It should be borne in mind that there are thousands of similar associations of all faiths throughout the entire country conducting their meetings on Sunday for many, many years, and it certainly would be revolutionary to hold that they have been violating the law and that all their transactions have been illegal." In the cited case, we think that the Superior Court approached the problem of statutory construction realistically.

A decision of the Court of Appeals of Kentucky illustrates clearly the modern approach to Sunday statutes. In Natural Gas Products Co. v. Thurman, 1924, 205 Ky. 100, 265 S.W. 475, 477, that Court held that it was not a violation of the Kentucky Sunday law, quite similar to that of Pennsylvania,[3] for the company to continue to manufacture carbon black throughout Sunday for, if the process had been stopped, there would have resulted a substantial loss to the company. The court stated, "In construing and applying the word 'necessity' in * * * [Sunday] statutes, it is not meant 'a physical and absolute necessity,' and 'the question must be determined according to the particular circumstances of each case, having regard also to the changing conditions of civilization.' ", citing 25 R.C.L. 1421.

■ Gathered in the footnote are a number of cases from numerous jurisdictions which indicate how the courts of the States have interpreted their respective Sunday laws.[4]

Returning now to the case at bar the evidence shows that an officer of the United States Army, about to be discharged from military service, was faced with the neces-

[3] Kentucky Statutes, § 1321.

[4] Held to be works of necessity:

Operation of automobiles for pleasure and sale of gasoline therefor. Williams v. State, 38 Ga.App. 694, 145 S.E. 483.

Work of clergymen, physicians, nurses, apothecaries, undertakers. Donovan v. McCarty, 155 Mass. 543, 30 N.E. 221.

Sending of telegram by husband to wife saying he would not return as expected (but not all telegrams). Western Union Telegraph Co. v. Fulling, 49 Ind. App. 172, 96 N.E. 967.

Any work necessary to running passenger and mail trains. Kellam v. State, 7 Ga.App. 575, 67 S.E. 683.

Farmer running reaper to save his crop. Johnson v. People, 42 Ill.App. 594.

Malting barley for the manufacture of beer. Crocket v. State, 33 Ind. 416.

Sugarmaking. Morris v. State, 31 Ind. 189.

Repairing machinery in a mill. State v. Collett, 72 Ark. 167, 79 S.W. 791, 64 L. R.A. 204.

Conveying property to creditor by bill of sale by absconding debtor. Hooper v. Edwards, 18 Ala. 280.

Marketing melons. Wilkinson v. State, 59 Ind. 416, 26 Am.Rep. 84.

Operating ice factory. Hennersdorf v. State, 25 Tex.Civ.App. 597, 8 S.W. 926, 8 Am.St.Rep. 448.

Piloting vessel into port. Perkins v. O'Mahoney, 131 Mass. 546.

Taking care of goods in warehouse. Powhatan Steamboat Co. v. Appomattox Railroad Co., 24 How. 247, 65 U.S. 247, 16 L.Ed. 682.

Smelting iron. Manhattan Iron Works v. French, 12 Abb.N.Cas., N.Y., 446.

Operating motion picture theatre when women's club got proceeds above actual expenses. Williams v. Commonwealth, 179 Va. 741, 20 S.E.2d 493.

Operating automobile wrecker service. Duke v. Mitchell, 153 Miss. 880, 122 So. 189.

Bringing home a cook. Crosman v. City of Lynn, 121 Mass. 301.

Taking a visitor home. Buck v. City of Biddeford, 82 Me. 433, 19 A. 912.

Riding for exercise. Sullivan v. Maine Cent. R. Co., 82 Me. 196, 19 A. 169, 8 L.R.A. 427.

sity of finding a house for his family within a very short time. The inference is possible that Mr. Chadwick had to find a home within a two day period; viz., between Saturday morning and Sunday night. Purely temporary accommodations at a hotel offered the only apparent alternative. There was then (as now) a severe housing shortage. We may take judicial notice of the notorious fact last stated. At 9:30 P.M. on Saturday Mr. and Mrs. Chadwick discovered a suitable home which was available for purchase. The terms of the sale were agreed on. None of the parties to the sale was an attorney or a person learned in the law. They attempted to summon a real estate broker to write a contract. He refused to make himself available until the following day, a Sunday. Parenthetically, we might inquire how Mr. Chadwick, absent from Philadelphia for more than three years, could reasonably be expected to find an available member of the bar at such an hour on Saturday. On Sunday a contract was drawn up and was executed. Shortly thereafter Mr. Chadwick departed for Fort Dix where he was required to report for separation on Monday.

██ We conclude that under the circumstances of the case at bar the contract entered into between the plaintiffs and the defendants is not within the prohibition of the Pennsylvania statute for two reasons. First, we hold that procuring a home for one's family is not a worldly employment within the purview of the law; scarcely a more worldly employment than hiring a horse and carriage to go see one's father on a Sunday and thereby discharging a filial duty as in Logan v. Mathews, 6 Pa. 417; certainly less worldly an employment than holding a business meeting of a beneficial association as in Singer v. Brith Achim Beneficial Ass'n, *supra*. Procuring a home for one's family is discharging a familial duty. Preserving the family and its relationships may not be deemed to be worldly employment and preservation of the family is a practical impossibility without a home, a fact which is demonstrated daily.

██ But, if we are wrong in the conclusion just expressed, we are of the opinion none the less that the plaintiffs in executing a contract for a home under the circumstances were performing a work of necessity; surely more a work of necessity than running a canal for profit as in Murray v. The Commonwealth, *supra*, or selling gasoline for Sunday travelers as in Commonwealth v. Minichello, *supra*, or fixing a railroad switch as in Commonwealth v. Shipley, *supra*, or manufacturing carbon black as in Natural Gas Products Co. v. Thurman, *supra*. The Chadwicks had to have a home. It seems odd to us that the rescue of the family relationships of a veteran should be deemed to be of less necessity than the rescue of an ox fallen into a pit; and yet the latter work, on unquestionable authority[5] could not be within the pious prohibitions of the Pennsylvania statute. We believe that the appellate tribunals of Pennsylvania would reach a conclusion similar to that which we have expressed.

The order of the court below dismissing the action will be reversed.

---

[5] St. Luke, 14:5: "And answered them, saying, Which of you shall have an ass or an ox fallen into a pit, and will not straightway pull him out on the sabbath day?"