In re Dimiter T. GORCHEV, Debtor.

M & I Heat Transfer Products, Ltd., Plaintiff,

v.

Dimiter T. Gorchev, Defendant.

Bankruptcy No. 98–16622–CJK. Adversary No. 98–2238.

United States Bankruptcy Court, D. Massachusetts.

March 7, 2002.

Eric S. Kupperstein, Boston, MA, for Plaintiff.

Timothy M. Mauser, David M. Lipton, Boston, MA, John Rodman, for Debtor.

Joseph Butler, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

CAROL J. KENNER, Bankruptcy Judge.

By its complaint in this adversary proceeding, the Plaintiff, M & I Heat Transfer Products, Ltd., asserts objections to the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(B), (a)(4)(D), and (a)(5) and seeks a determination that, under 11 U.S.C. § 523(a)(6), its tort judgment against the Debtor, Dimiter T. Gorchev, for $1,640,000 is excepted from discharge as a debt for willful and malicious injury. After a trial, the Court now enters the following findings of fact and conclusions of law and, on the basis thereof, will enter judgment for the Debtor on all counts.

The following facts are undisputed and serve as background for the various counts. In 1993, Dimiter Gorchev—acting through a corporation he then owned, known as Mitco Space–Gain, Inc. ("Mitco")—was, and long had been, in the business of designing and installing air transfer systems for the heating, ventilation, and cooling (HVAC) systems of large

buildings. He had developed technologies and designs, including what he calls the Space–Gain System, that differentiated his systems from conventional air transfer systems; and he (either in his own name or in the name of Mitco) held patents on certain of these technologies. The Plaintiff was the Debtor's competitor and one of few entities in this industry that worked with the particular technology offered by the Debtor. The Plaintiff used some of Gorchev's technology under license agreements negotiated in the 1980s, but by 1993 (and for reasons not in evidence), relations between Gorchev and the Plaintiff were decidedly bad.

In 1993, Vanderbilt University had selected the Plaintiff to fabricate and install the air handling system for a building project it was then undertaking, known as MRB–2.[1] On October 1, 1993 and at Gorchev's direction, Gorchev's patent attorney sent a letter to the Chancellor of Vanderbilt University. The letter stated that drawings related to MRB–2 indicate that the air handling systems to be constructed for and installed in that facility fell within the scope of Mitco's patents, that the Plaintiff had no license to make, use, or sell Mitco's patented systems, and that Vanderbilt's use of such systems would, unless licensed by Mitco, constitute an infringement of Mitco's patents. Gorchev himself also sent a letter the Chancellor, stating, in essence, that Vanderbilt was paying twice what it should for the air transfer systems in question, and that the Plaintiff's system is inferior to Mitco's and "offers no more benefits that any obsolete conventional system"; it tries to look like a Mitco system, but does so only in appearance. "They can never approach our equipment's performance or savings level

because they don't understand the technology that's behind the Mitco appearance," the letter stated.

In response, the Plaintiff brought suit against the Debtor in United States District Court for the District of Massachusetts on four counts: defamation; product disparagement; intentional interference with advantageous·business relations; and violation of G.L. c. 93A, § 11. The jury returned verdicts for the Plaintiff on the defamation count for $220,000, on the product disparagement count for a further $220,000, and on the intentional interference with advantageous business relations for a further $1,200,000. In addition, the court itself determined that the same conduct that constituted the basis of the three tort counts constituted a willful violation of G.L. c. 93A, § 11, justifying (in material part) an award of attorney's fees. Judgment entered for the Plaintiff for $1,640,000, with interest from December 3, 1993, plus attorneys fees of $84,412.50. On appeal, the Court of Appeals for the First Circuit vacated and reversed the determination of liability under G.L. c. 93A (ruling that the conduct in question occurred outside the geographical reach of that statute) but affirmed the judgment in all other respects. Accordingly, on June 26, 1998, the District Court entered final judgment, reflecting the modifications on appeal, in the amount of $1,640,000 plus interest. The Debtor filed his petition under Chapter 7 of the Bankruptcy Code on July 7, 1998.

### Objections to Discharge

██ "At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection." F.R.Bankr.P. 4005; *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955

---

1. The evidence does not indicate whether Vanderbilt had actually entered into a contract with the Plaintiff.

F.2d 134, at 136 (1st Cir.1992) ("The burden of persuasion rests with the party opposing discharge."). The standard of proof is the preponderance-of-the-evidence standard. *In re Adams*, 31 F.3d 389, 394 (6th Cir.1994), and cases cited. "The statutory right to a discharge should ordinarily be construed liberally in favor of the debtor"; and "the reasons for denying a discharge to a debtor must be real and substantial, not merely technical and conjectural." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir.1987); *Burgess*, 955 F.2d at 137.

### 1. *§ 727(a)(2)*

■ In Counts I and II of the Second Amended Complaint, the Plaintiff objects to the Debtor's discharge under § 727(a)(2)(A) and (B) of the Bankruptcy Code. In these counts, the Plaintiff alleges that the Debtor, with intent to hinder, delay, or defraud his creditors (especially the Plaintiff) and the Chapter 7 Trustee, either transferred his business assets to third parties within a year before his bankruptcy filing and/or concealed his continuing interest in those assets, and in the income they produced, both during the year before the bankruptcy filing and in the months and years after the filing. The Plaintiff submitted virtually no evidence to support these allegations, and the evidence that the Plaintiff did submit on these issues was exceedingly vague, unclear, and conjectural. Though the failure of evidence here was complete, it is enough to note that the Plaintiff failed to identify with particularity the assets at issue and to establish what interest the Debtor had in them before the alleged transfers and concealment. I do not find that the Plaintiff's allegations under these counts are false; the evidence permits no finding at all. I rule only that the Plaintiff bears the burden of proof on these counts and has not sustained that burden.

### 2. *§ 727(a)(3)*

■ In Count III, the second amended complaint alleges, without reference to specific facts, that the Debtor violated § 727(a)(3): that is, he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). The complaint fails to identify with particularity the recorded information at issue or the specific financial condition or transactions to which the records pertained, and it further fails to state with particularity how the Debtor is alleged to have violated § 727(a)(3) with such information; the Plaintiff did not rectify this lack of specificity at trial. Moreover, the Plaintiff submitted no evidence at trial that the Plaintiff violated of § 727(a)(3). The Plaintiff has failed to carry his burden of proof on this issue.

### 3. *§ 727(a)(4)(A)*

In Count IV, the Plaintiff alleges that the Debtor knowingly and fraudulently made false oaths in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4)(A) ("The court shall grant the debtor a discharge, unless ... (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account"). This count alleges several false oaths.

#### a. *Willke Claim*

■ The Plaintiff first contends that, in his schedule of unsecured creditors, the Debtor falsely listed Herbert Willke, a longtime associate of the Debtor, as having an unsecured claim in the amount of $1,400,000; but in fact, contends the Plain-

tiff, Mr. Willke has no unsecured claim. The Debtor's schedules do list Mr. Willke as having an unsecured claim in the amount of $1,400,000, and the schedules are signed under penalty of perjury, such that statements therein are statements under oath, but the Plaintiff adduced no evidence as to the truth or falsity of this statement or as to the specific intent of the Debtor in making it. The Plaintiff has not sustained his burden of proof as to this statement.

### b. Willke's Control of Debtor's HVAC Business

■ The Plaintiff next alleges that the Debtor stated falsely under oath that he works for Willke; in fact, contends the Plaintiff, Willke works for the Debtor, who still controls the HVAC business. The Plaintiff has failed to sustain his burden of proof as to this alleged statement. The Plaintiff has failed to show that (and where) the Debtor made the alleged statement under oath and that the alleged statement was false. The Plaintiff's evidence of the Debtor's prepetition business assets and arrangements, and of their alleged modifications to avoid the claims of creditors, is virtually nonexistent and (insofar as any was adduced at all) unreliable.

### c. Debtor's Income

■ The Plaintiff next alleges that the Debtor falsely stated under oath that he had no income. The Plaintiff has failed to sustain his burden of proof as to this alleged statement. The Plaintiff has failed to show that (and where) the Debtor made the alleged statement under oath and that the alleged statement was false. If the allegation refers to the Debtor's statement of his income in his bankruptcy schedules—it is not clear whether this is the statement the Plaintiff is relying on—then the allegation is not proven. First, the statement lists monthly income of $1108 from social security/government assistance and, though it lists his "current monthly wages, salary, commissions" as $0, it also explains that, "although no commissions have yet come due to the debtor, HVAC 21 pays numerous expenses of the debtor on a regular basis." Therefore, the statement does not state that the Debtor has no income. Moreover, this schedule asked only for the Debtor's "current" income: that is, as of the date of his bankruptcy filing. The Plaintiff adduced evidence of income that the Debtor earned in the three years *after* the bankruptcy filing, but not of his income before and at the time of the filing. Plaintiff has not sustained its burden of proof as to the falsity of this statement.

### d. Debtor's Assets

■ The Plaintiff next alleges that the Debtor stated falsely under oath that he had no assets, but that in truth the Debtor owns the HVAC business he carries on with Willke; and Mitco was his alter ego, so its assets were his. The Plaintiff has not sustained its burden of proof as to this allegation. The Plaintiff has not submitted evidence of the Debtor's having made the alleged statement, under oath or otherwise. And the Plaintiff has not sustained his burden of proof as to the falsity of the alleged statement. The Plaintiff's evidence of the Debtor's prepetition business assets and arrangements, including his relation to Mitco, and of his alleged modifications of these assets and arrangements to avoid the claims of creditors, is virtually nonexistent and, insofar as any such evidence was adduced at all, unreliable.

### e. Statements About Mitco

■ Finally, the Plaintiff alleges that the Debtor made false statements under oath to the Bankruptcy Court about the

financial condition, assets, and business transactions of Mitco. The Plaintiff has failed to carry its burden of proof as to these allegation. The Plaintiff has not submitted evidence of the Debtor's having made the alleged statements, under oath or otherwise. Nor has the Plaintiff sustained its burden of proof as to the falsity of the alleged statement. The Plaintiff's evidence of Mitco's assets, transactions, and financial conditions, of the Debtor's relationship to Mitco and its assets, and of his alleged transfers of these assets and modification of his business arrangements to avoid the claims of creditors, is virtually nonexistent and, insofar as any such evidence was adduced at all, unreliable.

### 4. § 727(a)(4)(B)

 In Count V, the Plaintiff alleges that the Debtor knowingly and fraudulently presented or used false claims in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4)(B) ("The court shall grant the debtor a discharge, unless … (4) the debtor knowingly and fraudulently, in or in connection with the case—(B) presented or used a false claim"). This count alleges several false claims. The alleged "false claims" are the same alleged statements as constitute the basis for the Plaintiff's count under § 727(a)(4)(A). Of those various statements, only one concerns a "claim" as defined in 11 U.S.C. § 101(5) (defining claim for purposes of purposes of title 11). Claim as so defined does not mean "representation" or "statement" but "right to payment" or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). Only the allegation as to the Willke claim could state a cause of action under this subsection. And

I need not decide whether a debtor's false listing of a debt to another constitutes presentation or use of a false claim within the meaning of this subsection because, even if it does, the Plaintiff adduced no evidence as to the truth or falsity of this claim or as to the specific intent of the Debtor in listing it. The Plaintiff has not sustained his burden of proof as to this allegation.

### 5. § 727(a)(4)(D)

 In Count VI, the Plaintiff alleges generically that the Debtor knowingly and fraudulently, in or in connection with his case, "withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). In the Second Amended Complaint, the Plaintiff alleges that the Chapter 7 Trustee requested records, but the Plaintiff does not specify which records were requested and when, nor does he specify what precisely was withheld. At trial, the Plaintiff failed entirely to prove that the Debtor withheld recorded information from either of the two trustees who have served in this case.[2]

### 6. § 727(a)(5)

 In its final count under § 727(a)(5), the Plaintiff alleges that the Debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Though this count is very long, it nowhere identifies precisely what loss or deficiency the Debtor has failed to explain, which is the Plaintiff's initial burden on objections

---

**2.** The Chapter 7 Trustee was initially Barbara Gilmore, but she resigned as trustee on 11/14/00 and was replaced by Joseph Butler, who has served since Ms. Gilmore's resignation.

to discharge under subsection (a)(5). Nor does this count indicate when and by whom the Debtor has been called upon to explain the alleged loss or deficiency. The Plaintiff has submitted no evidence of the extent or value of the Debtor's assets at any time prepetition, much less a loss of assets, so the Plaintiff has not demonstrated a loss of assets needing explanation.

As for deficiency of assets to meet liabilities, there is no evident need for explanation. The Debtor's principal liability is his judgment debt to the Plaintiff for $1.64 million plus interest from 1993. This debt arises from a tort, not a voluntary business arrangement. The source of the liability is evident, and the lack of assets to meet it needs no explanation.

The Debtor's inability to satisfy his liabilities is explained in large part by the fact that the Plaintiff obtained a large judgment against him and Mitco, which judgment in turn caused Mitco to file a petition under Chapter 7 of the Bankruptcy Code and to cease doing business, effectively drying up the stream of income from which the Debtor previously serviced his debt. As Willke testified: upon entry of the judgment, it became evident to him that further investment in the Debtor's enterprise would only inure to the benefit of the Plaintiff, not to Willke and the Debtor, so he then decided to leave the Debtor and start up on his own. In short, the judgment explains much of the debt and Mitco's cessation of business and the lack of income stream from which to pay obligations.

For these reasons, I find that the Plaintiff has failed to carry its burden in three respects. First, in view of Plaintiff's fail-ure in the complaint to specify the loss or deficiency at issue, the count must be dismissed; the Debtor cannot be required at trial to explain a loss or deficiency without prior notice of what requires explanation. Second, the Plaintiff failed at trial to carry its initial burden of proving that there was a loss of assets for which explanation might be needed. And third, the Plaintiff has not sustained its ultimate burden of proving that the deficiency of assets to meet his liabilities is not adequately explained. For these reasons, judgment must enter for the Debtor on this count as well.

### Determination of Dischargeability under § 523(a)(6)

In the alternative, the Plaintiff seeks a determination that its judgment debt against the Debtor is excepted from discharge as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order to establish the nondischargeability of the debt under this subsection, the Plaintiff must prove by a preponderance of the evidence[3] the following four elements:

1. the debtor injured another entity or the property of another entity

2. willfully

3. and maliciously,

4. and, by such injury, gave rise to the debt at issue.

"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy," and, for that reason, the claimant must show that its claim "comes squarely within an exception enumerated in Bankruptcy Code § 523(a)."

---

**3.** "The standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Pal-macci v. Umpierrez,* 121 F.3d 781, 787 (1st Cir.1997). The burden of proof rests with the party contesting the dischargeability of the debt. *Palmacci,* 121 F.3d at 787.

*Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994); *Palmacci,* 121 F.3d at 786.

The Plaintiff contends that each of the requisite elements has already been established by virtue of the Plaintiff's prepetition judgment against the Debtor, and that the Debtor is collaterally estopped from relitigating the issues. The Debtor responds that willfulness and malice were not litigated in the prepetition action and therefore cannot be deemed established by collateral estoppel. If collateral estoppel is not available, the Plaintiff relies, in the alternative, on the evidence, arguing that the evidence establishes that the Debtor caused the injury both willfully and maliciously.

### 1. *Collateral Estoppel*

Collateral estoppel principles apply in proceedings to determine the dischargeability of a debt under § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). The preclusive effect of a judgment is determined by the collateral estoppel law of the jurisdiction from which the judgment derives. In this instance, the judgment was issued by a federal court, so the governing principles of collateral estoppel are those of federal law. Under federal law, a judgment in one proceeding will preclude the relitigation between the same parties in a subsequent proceeding of any factual or legal issue that was actually decided in the first proceeding only when the following conditions are satisfied: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir. 1994).

The Plaintiff first contends that the findings and ruling made by the district judge on the Plaintiff's count under Massachusetts G.L. c. 93A establish both willfulness and malice. The Court disagrees. The judgment for the Plaintiff on this count was reversed on appeal because the conduct at issue occurred outside the jurisdictional reach of the statute; therefore, the district judge's findings and rulings cannot be deemed necessary to the judgment, and they can have no preclusive effect here. It makes no difference that the specific findings and rulings at issue were not themselves discussed or disturbed on appeal. The ruling on appeal rendered them moot and unnecessary to the judgment as modified on appeal. (I make no ruling as to whether the findings and rulings on the claim under G.L. c. 93A were identical to those required to establish willfulness and malice under 11 U.S.C. § 523(a)(6).)

The Plaintiff next relies on the findings and rulings implicit in the jury verdicts on the three tort claims as to which the Plaintiff's judgment was sustained on appeal: claims for defamation, injurious falsehood (product disparagement), and intentional interference with advantageous business relations. In order to determine which issues the judgment on these counts precludes the Debtor from relitigating here, the Court must first determine the extent to which there is identity of issues. To do this, the Court must compare the elements Plaintiff was required to prove on his three tort counts in the United States District Court action to the elements of § 523(a)(6).

The Court concludes, and the Debtor does not deny, that each of these torts required proof of two of the requirements of § 523(a)(6): that the debtor injured an-

other entity or the property of another entity; and that the resulting judgment debt is for such injury. The Debtor does deny that any of the three torts established either of the two further requirements of § 523(a)(6): that the injury be "willful" and that the injury be "malicious."

The Supreme Court has established that the word "willful" requires intent to injure and not merely intent to perform the act that causes injury.

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.... [T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.' Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.*

The word "malicious" requires that the injury be "wrongful" and committed "without just cause or excuse, in conscious disregard of one's duty." *Printy v. Dean Witter Reynolds*, 110 F.3d 853, 859 (1st Cir.1997); *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 21 (Bankr.D.Me. 1998). Accordingly, the injury complained

of must be "wrongful," in the sense of lacking just cause or excuse; and the debtor must have caused it in *conscious disregard* of his or her duty—*i.e.*, the debtor had to know or appreciate that injury was wrongful when he or she caused it. "No special malice toward the creditor need be shown," meaning that malice can be present "even in the absence of personal hatred, spite or ill-will." *Id.* The criteria are wrongfulness and knowledge thereof.

None of the three torts for which the Debtor was adjudicated liable required a showing that the injury was willful or malicious within the meaning of § 523(a)(6). With respect to the defamation count, the Plaintiff states[4] that it was required to prove (1) that the Debtor published a false statement, (2) that the Debtor did not act reasonably in determining the truth or falsity of the statement before publishing it, (3) that the publication was to someone other than the Plaintiff, and (4) that the statement caused injury to the Plaintiff's good name and reputation. There was no requirement of intent to injure (as opposed to intent to do the act that caused injury), and there was no requirement of "conscious disregard of duty." In fact, it was not necessary to prove that the Debtor knew his act to be false, or even that he acted recklessly. Negligence in ascertaining truth or falsity is all that was required, and that is not enough to make the resulting injury malicious. Therefore, the judgment on the defamation count does not establish either willfulness or malice.[5]

---

4. The Plaintiff did not submit into evidence the trial transcript or jury instructions from the District Court trial; therefore, this Court does not know which elements the Plaintiff was actually required to prove in support of its tort claims. Instead, the Court accepts for purposes of argument the Plaintiff's own representations as to what elements it was required to prove.

5. Moreover, the defamation count represents only $220,000 of the $1,640,000 in damages; therefore, even if its elements included willful and malicious injury, that finding would apply to only a fraction of the total at issue.

■ With respect to the product disparagement count, the Plaintiff states that it was required to prove the following: (1) that the defendant published a statement (2) that was reasonably understood by those who heard or read it to cast doubt on the quality of Plaintiff's goods or services; (3) and that the statement was false, (4) concerned the plaintiff's products or services, and (5) was a substantial factor in causing the Plaintiff's monetary loss. None of these requires or amounts to willful injury or malicious injury. There is no need to show intent to injure (only, at best, intent to publish a statement), no requirement of knowledge that the statement was false, and not even a requirement of negligence in ascertaining its truth or falsity. Therefore, there is again no identity between the elements of the tort and the requirements of willfulness and malice.[6]

■ With respect to the count for intentional interference with advantageous business relations, which accounts for $1,200,000 of the damages at issue, the Plaintiff states that it was required to prove (1) that the Plaintiff had a business relationship with a probability of future economic benefit to itself; (2) that Defendant knew or should have known of this relationship/expectancy at the time of the acts complained of; (3) that Plaintiff's conduct was intentional; (4) that the conduct directly and proximately caused damage to Plaintiff; and (5) but for the conduct of the Defendant, the Plaintiff was reasonably certain to have continued the business relationship or to have entered into prospective business relationships. None of these elements requires or amounts to willful injury or malicious injury. The defendant need only have intended his conduct, not the resulting injury. The tort did require

proof that the Debtor knew of the relationship/expectancy with which he interfered, but this is not the same as knowledge that the act would interfere with the relationship/expectancy. Therefore, there was no requirement of "willful injury." Nor is there a requirement that the defendant's act be wrongful or that he know it to be wrongful. One can interfere with a business relationship for reasons that are not wrongful; in this instance, if the Debtor interfered with the Plaintiff's business relationship while believing in good faith that he was protecting his patents from unlawful infringement, then the injury, even if willful, would not be wrongful or malicious. Therefore, there was no requirement of "malicious injury."

For these reasons, I conclude that the Plaintiff cannot, by collateral estoppel, establish either willfulness or malice with respect to any portion of the damages. The underlying judgment establishes preclusively only that the Debtor injured the property of the Plaintiff and that the resulting judgment debt arises entirely from such injury.

### 2. *The Evidence as to Willfulness and Malice*

■ In order to determine whether the injury in question was willful and malicious, the Court must first determine precisely which acts and injuries the underlying judgment is based on. The evidence on that issue is exceedingly spare. The Plaintiff's Supplemental Amended Complaint and Jury Demand from the District Court action indicates that each of the three counts against the Debtor was itself founded on three separate communications: the letter of October 1, 1993 from Debtor's patent attorney to Mr. Joe B.

---

**6.** Moreover, the product disparagement count, like the defamation counts, represents only $220,000 of the $1,640,000 in damages; therefore, even if its elements included willful and malicious injury, that finding would apply to only a fraction of the total at issue.

Wyatt, Chancellor of Vanderbilt University; the letter of October 6, 1993, from the Debtor himself to the same Mr. Wyatt; and an undated letter distributed widely by the Debtor himself "to Members of the Construction/Engineering/HVAC Community." Each of these documents is in evidence. Together they include a number of different statements. On the record before me, it is impossible to determine which of the statements served as the basis for the verdict on each of the three counts on which the Debtor was adjudicated liable for damages. The Plaintiff's evidence failed to include the trial transcript or even the jury instructions; and, though the jury verdict is in evidence, it includes no answers to special questions, so that one cannot determine from the verdict sheet itself which of the underlying statements constituted the basis for the verdict on each count. The verdict could conceivably rest entirely on only one of the various statements. Nothing in the record permits this Court to determine on which statement or statements the judgment of the United States District Court is based.

This does not prohibit the Court from finding, as I do, that each of the three torts was a "willful" injury within the meaning of § 523(a)(6). I make this finding because I find that each of the Debtor's three communications was consciously intended in its entirety to injure the business of the Plaintiff. This finding of willfulness is based on four evidentiary supports. First, Mitco and the Plaintiff were competitors in a very small market for a specialized technology to which the Debtor claimed proprietary rights. Second, the collective contents of the communications evidence a clear intent to prevent the Plaintiff from profiting from the use of technology that, at least ostensibly, the Debtor regarded as Mitco's. Third, Mr. Willke testified that the Debtor's relationship with the Plaintiff at the time of these

communications was strained; the Debtor's intentions toward the Plaintiff in this period were not of good will. And fourth, the testimony of the Debtor himself—that his only intention, in communicating with Vanderbilt University, was to ensure that it had the benefit of the best information and calculations in designing its building— was thoroughly implausible and incredible. I did not believe Mr. Gorchev's testimony about his own motivation. For these reasons, I conclude that the injury was willful.

It is more difficult to determine whether the injury was malicious. As I stated above, in order to establish malice within the meaning of § 523(a)(6), the Plaintiff must show (1) that the injury complained of was "wrongful," in the sense of lacking just cause or excuse; and (2) the debtor caused it in *conscious disregard* of his duty—that is, with knowledge or appreciation of its wrongfulness. To establish malice, the Plaintiff seems to rely principally on the evidence of the Debtor's intent to injure, as if intent to injure were malice. As a matter of statutory interpretation, this cannot be the case. Intent to injure is the essence of willfulness. Malice is a separate requirement and therefore must be understood to require something other than intent to injure. Otherwise, the word "malicious" in § 523(a)(6) would be redundant and a nullity.

Plaintiff also seems to argue that malice is established by the falsity of the statements on which the tort verdicts were based. Here the Court is hindered by Plaintiff's failure to adduce evidence as to which of the statements in the three communications provided the basis for the three tort verdicts, and especially for the verdicts on defamation and product disparagement, the two requiring proof of falsity. Although the jury clearly found that at least one of these statements was false, this Court cannot determine which state-

ments provided the basis for the verdicts on defamation and product disparagement. And the Plaintiff has adduced no evidence in this proceeding as to the falsity of any of the statements.[7]

Of course, the prior judgment establishes by collateral estoppel that the damages for defamation and product disparagement are based on false statements. And the fact that each arises from a false statement makes the injuries (at least the damages on those two counts) wrongful. But wrongful injuries are not malicious unless the Debtor also knew them to be false when he made them; otherwise there can be no "conscious disregard of duty," as the cases require. The Plaintiff has adduced no evidence that the Debtor knew his statements to be false when he made them, or even that he made them with reckless disregard for the truth.[8] Therefore, insofar as the Plaintiff relies on falsity to establish malice, the Court concludes that the Plaintiff has not sustained its burden of proof.

 If not on the basis of falsity, the injuries might still be wrongful by virtue of some other factor or circumstance, but the Plaintiff has not sufficiently put any other aspect of these statements in issue. What evidence I do have on the issue preponderates in favor of the Debtor. Specifically, the Debtor (through Mitco) claims an interest in certain patents. A patent holder's defense of his or her patent rights is not wrongful. And even if the Debtor's patent rights were not being infringed—I have no evidence on that issue—if the Debtor in good faith believed the Plaintiff was infringing his patent

rights, as ostensibly he did, then there was no conscious disregard of duty, no knowledge of wrongfulness, in his publishing that fact to Vanderbilt University and to the Construction/Engineering/HVAC community. I do not find that the Plaintiff's conduct was not malicious—the evidence was too spare to reach that conclusion, and surely there is more to this controversy than has been introduced into evidence. But the Plaintiff bears the burden of proof and, on the evidence before me, has not sustained that burden as to the maliciousness of any part of the injury. For this reason, judgment will enter for the Debtor on the count under § 523(a)(6).

### Other Matters

#### 1. Satisfaction/Release

At the conclusion of trial, the Debtor filed a memorandum of law in support of an affirmative defense: that the underlying debt has been satisfied or released by virtue of a settlement agreement between the Plaintiff and the Chapter 7 Trustee of Mitco Space Gain, Inc. The Court will reject this defense because the Debtor did not affirmatively plead it (in fact never filed any answer at all to the Second Amended Complaint).

#### 2. Defendant's Motion to Correct His Testimony

 After completion of the trial, the Debtor filed a motion to retract and alter certain of his testimony that he later realized was inaccurate (and possibly damag-

---

7. Indeed, Plaintiff has neither indicated which of the statements it contends was false nor explained how each was false.

8. The defamation verdict required proof that the Debtor did not act reasonably in determining the truth or falsity of the statement

before publishing it. But a failure to act reasonably in determining truth or falsity is not knowledge of falsity or even reckless disregard for the truth. The product disparagement count required no finding of fault.

ing).[9] The Plaintiff opposes the motion and argues that the testimony conclusively establishes both willfulness and malice.[10]

The Court will deny the motion as moot. The Court did not construe the testimony at issue as an admission of willfulness or malice. Rather, the Court attached no weight to the testimony at all because, in context, it was unclear what the question was asking and less clear what the Debtor construed it to be asking. Throughout the adversary proceeding, the Debtor had steadfastly denied both willfulness and malice; the only thing clear about the Debtor's answer to this question was that he was not suddenly capitulating on these issues. Moreover, the Court deemed it unlikely that he understood fully the language with which the question was asking him to agree or disagree; and some of that language was capable of being construed in crucially different ways (even among attorneys), so the question and answer were inherently ambiguous.

### 3. *Avoidance of Transfers*

■ In the final "Prayer" of its second amended complaint, the Plaintiff asks the Court for judgment "declaring that the transfer(s) of the Assets and/or diversion of monies that are the subject of its Complaint are void." The Court construes this as a request to avoid fraudulent transfers. The Plaintiff stated no separate count for such relief and did not pursue this relief at

trial. The Court will dismiss this prayer because the right to the relief it seeks belongs to the Debtor's bankruptcy estate and, unless abandoned, may be prosecuted only the Chapter 7 Trustee. Moreover, the Plaintiff has adduced no evidence in support of this relief.

### 4. *Judgment on the Debt*

The Prayer also demands "judgment against defendant debtor in the amount of plaintiff's United States District Court Judgment, with interest, costs and attorney's fees." The Court will dismiss this petition as moot because the underlying debt will be discharged. To the extent that the Plaintiff now seeks an award of the costs and fees incurred in this proceeding, these are denied. Each party shall bear its own costs and fees.

### 5. *Examination by Trustee*

Lastly, the Prayer also demands, as an alternative to denial of the Debtor's discharge, that the Court order the Chapter 7 trustee to examine the acts and conduct of the Debtor to determine whether a ground exists for denial of his discharge. 11 U.S.C. § 727(c)(2) ("On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge."). The Court will deny this request. The Plaintiff itself has already undertaken this examination;

---

9. Plaintiff's counsel read the following finding of Judge Lasker (on Plaintiff's count under G.L. c. 93A) to the Debtor and asked him whether he agreed with the finding: "I find that Gorchev disseminated his letter to the industry and wrote his letter to Chancellor Wyatt knowingly and intentionally, that is to say, not only with knowledge of the message he was communicating, but with the purpose of interfering with M & I's business relations with Vanderbilt University." The Debtor answered that he agreed.

He now states that he was confused by the question and should have answered as follows: that he did not send the letter "to the industry" but only to Vanderbilt and that his intent was to persuade Vanderbilt to adopt an energy saving design, which he did not believe the Plaintiff offered.

10. The Court disagrees. I attach no weight to the testimony, but even taken at face value, it would establish only that the injury was willful, not that it was also malicious.

and, in any case, the deadline for objecting to discharge has long passed.

### Conclusion

For the reasons set forth above, the Court will, by entry of a separate judgment, dismiss the Plaintiff's complaint in its entirety.